Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiff
Chester Steele

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHESTER STEELE, individually, and on behalf of a class of similarly situated individuals,<br><br>        Plaintiff,<br><br>       v.<br><br>GENERAL MOTORS LLC, a Delaware limited liability company.<br><br>        Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Violations of California's Consumers Legal Remedies Act<br>(2)  Violations of Unfair Competition Law<br>(3)  Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act<br>(4)  Breach of Implied Warranty pursuant to the Magnuson-Moss Warranty Act<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.      Plaintiff Chester Steele ("Plaintiff") brings this action for himself and on behalf of all persons in the United States who purchased or leased any 2010-2015 Cadillac SRX (collectively, "Cadillac Vehicles" or "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and serviced by General Motors LLC, a Delaware limited liability company ("GM" or "Defendant").

2.      This case arises out of a defect in the Class Vehicles' headlights that causes the headlights to abnormally and prematurely wear-out and fail.

3.      Specifically, on information and belief, Plaintiff alleges that the seals used in Cadillac Vehicles' headlights wear-out or deteriorate causing corrosion and electrical shorts in the headlight components due to accumulated moisture and condensation inside the housing unit (the "Headlight Defect").

4.      As a result of the Headlight Defect, the Class Vehicles present a safety hazard and are unreasonably dangerous to consumers.  As the Headlight Defect progresses, it can lead to the premature wear or deterioration of the headlight assembly housing seals resulting in accumulation of moisture or condensation.  This in turn results in very dim light output or electrical shorts in the headlight components.  These conditions can thereby contribute to traffic accidents, which can cause personal injury or death.  Hundreds of Class Members have complained to the National Highway Traffic Safety Administration about the danger of the Headlight Defect. One such complaint, copied below, exemplifies the danger:

///

///

///

///

CLASS ACTION COMPLAINT

1  NHTSA ID Number: 10651159

2  Incident Date October 8, 2014

3  Consumer Location GROSSE POINTE WOODS, MI

4  Vehicle Identification Number 3GYFNKE46AS****

5      BOTH HEADLIGHTS QUIT WORKING, HIGH BEAMS AND LOW

6  BEAMS. STARTED VEHICLE AT NIGHT AND THE VEHICLE DID NOT

7  HAVE ANY HEADLIGHTS. *TR

8      5.      Since 2011, in an effort to address owner complaints regarding the

9  Headlight Defect, GM has issued a Customer Satisfaction Program and several

10 Technical Service Bulletins ("TSBs"), as detailed below.  However, these efforts

11 have been entirely inadequate in remedying the Headlight Defect.

12      6.      In fact, rather than redesigning the defective components, GM

13 purports to "repair" the Class Vehicles by simply replacing defective

14 components with the same defective components.  Further, because GM refuses

15 to cover the cost of these repairs or issue a recall, Class Vehicle owners have to

16 pay out of pocket for these repairs.  GM thus unfairly shifts the costs to the Class

17 Members, and benefits from the revenue generated by repeat repairs.  As a result

18 of the Headlight Defect, consumers will be required to pay hundreds, if not

19 thousands, of dollars to repair or replace the headlights and related components.

20      7.      On information and belief, all the Class Vehicles are equipped with

21 the same or substantially identical headlight assemblies, and the Headlight

22 Defect is the same for all Class Vehicles.

23      8.      Beginning as early as 2010, through consumer complaints and

24 dealership repair orders, among other internal sources, Defendant knew or

25 should have known that the Class Vehicles and the headlights contained a design

26 defect that adversely affects the drivability of the Class Vehicles and causes

27 safety hazards.  Nevertheless, Defendant has actively concealed and failed to

28 disclose this defect to Plaintiff and Class Members prior to the time of purchase

or lease and thereafter.

9.     On information and belief, Defendant's corporate officers, directors, or managers knew about the Headlight Defect and failed to disclose it to Plaintiff and Class Members, at the time of sale, lease, repair, and thereafter.

10.     In fact, in December of 2011, Defendant issued a "Customer Satisfaction Campaign" for the Cadillac Vehicles addressing "a condition in which the halogen headlamp connectors may lose electrical contact with the low beam headlamp."

11.     Further, several Technical Service Bulletins have been released to address the same issue since at least August 2010.  Specifically, in August 2010 Defendant issued Bulletin No. 10-08-42-001A for model year 2010-2011 Cadillac Vehicles to address "Exterior Lighting" and specifically "LOW BEAM HEADLAMP BULB DIAGNOSIS/REPLACEMENT."  Subsequently Defendant released Bulletin No. 10-08-42-001C in February 2012, Bulletin No. 10-08-42-001D in November of 2014 and Bulletin No. 10-08-42-001E in May 2015 for the Cadillac Vehicles and all to address the same issue.

12.     Because GM will not notify Class Members that the headlights are defective, Plaintiff and Class Members (as well as members of the general public) remain subject to dangerous driving conditions that can occur without warning.

13.     The alleged Headlight Defect is inherent in Cadillac Vehicles and was present in all Cadillac Vehicles at the time of sale.

14.     GM knew about and concealed the Headlight Defect present in all Class Vehicles, along with the attendant dangerous safety and driveability problems, from Plaintiff and Class Members, at the time of sale, lease, repair, and thereafter.  In fact, instead of repairing the defects in the defective headlights, GM either refused to acknowledge their existence, or performed repairs that simply masked the defects.

15.    If Plaintiff and Class Members knew about these defects at the time of sale or lease, Plaintiff and Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

16.    As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles, including, but not limited to, out of pocket costs related to repairs to the defective headlights.  Additionally, as a result of the Headlight Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' headlight components are substantially certain to fail before their expected useful lives have run.

## THE PARTIES

**Plaintiff Chester Steele**

17.    Plaintiff Chester Steele ("Plaintiff") is a California citizen who resides in Yreka, California.

18.    On or around October 12, 2012, Plaintiff purchased a Certified Pre-Owned 2010 Cadillac SRX from Jessup Auto Plaza Cathedral City, an authorized Cadillac dealer in Riverside County.

19.    Prior to purchasing his Cadillac vehicle, Plaintiff saw television commercials, magazine advertisements, magazine reviews, reviewed the windshield "Monroney" sticker, and test drove the vehicle with a dealership employee.

20.    Plaintiff's Cadillac vehicle has and continues to exhibit the Headlight Defect described herein and Plaintiff has suffered a loss as a result of the Headlight Defect.

21.    Specifically, during the first week of October 2016, Mr. Steele drove from his home in Yreka to Palm Springs.  Prior to leaving he noticed condensation in the headlights and that the lenses looked gray.  He polished the headlights to help with the discoloration but could not do anything with the

fogging. During the drive he encountered rain and noticed that a significant increase of moisture in the headlamp assemblies had accumulated.  At the end of January 2017 the driver side bulb failed at approximately 51,600 miles. As a result of this bulb failure, Plaintiff was forced to drive with only one headlight in the dark.

22.   On or about January 27, 2017, Mr. Steele complained to Jessup Auto Plaza, an authorized GM repair facility, about his headlight failure.  The dealer diagnosed that the igniter in his headlight shorted out due to moisture in the headlights.  The dealer charged Mr. Steele $660.29 to repair his headlights.

23.   Plaintiff continues to experience issues with his Cadillac SRX headlights and he fears they can fail at any time without warning.

24.   Plaintiff purchased his vehicle primarily for personal, family, or household use.  GM manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

25.   Had GM disclosed its knowledge of the Headlight Defect before he purchased his vehicle, Plaintiff would have seen or heard such disclosures and been aware of them.  Indeed, GM's omissions were material to Plaintiff.  Like all members of the Class, Plaintiff would not have purchased his Class Vehicle, or would have paid less for it, had he known of the Headlight Defect.

26.   At all times, Plaintiff, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Defendant**

27.   Defendant General Motors LLC is a Delaware limited liability company with its principle place of business located at 300 Renaissance Center, Detroit, Michigan.  General Motors LLC is registered to do business in the State of California.  The sole member and owner of General Motors LLC is General Motors Holdings LLC.  General Motors Holdings LLC is a Delaware limited liability company with its principle place of business in the State of Michigan.

1   General Motors Holdings LLC's only member is General Motor Company, a

2   Delaware corporation with its principal place of business in the State of

3   Michigan.  General Motors Company has 100% ownership interest in General

4   Motors Holdings LLC.

5        28.     General Motors LLC, through its various entities, designs,

6   manufactures, markets, distributes, services, repairs, sells, and leases passenger

7   vehicles, including the Class Vehicles, nationwide and in California.  General

8   Motors LLC is the warrantor and distributor of the Class Vehicles in the United

9   States.

10        29.     At all relevant times, Defendant was and is engaged in the business

11   of designing, manufacturing, constructing, assembling, marketing, distributing,

12   and selling automobiles and motor vehicle components in Riverside County and

13   throughout the United States of America.

14   **JURISDICTION**

15        30.     This is a class action.

16        31.     Plaintiff and other members of the Proposed Class are citizens of

17   states different from the home state of Defendant.

18        32.     On information and belief, aggregate claims of individual Class

19   Members exceed $5,000,000.00 in value, exclusive of interest and costs.

20        33.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

21   **VENUE**

22        34.     GM, through its business of distributing, selling, and leasing the

23   Class Vehicles, has established sufficient contacts in this district such that

24   personal jurisdiction is appropriate.  Defendant is deemed to reside in this district

25   pursuant to 28 U.S.C. § 1391(a).

26        35.     In addition, a substantial part of the events or omissions giving rise

27   to these claims took place in this district.  Plaintiff purchased his 2010 Cadillac

28   SRX, which is the subject of this action, from Jessup Auto Plaza Cathedral City,

1    an authorized GM dealer in Riverside County, California.

2    36.    In addition, Plaintiff's Declaration, as required under California

3    Civil Code section 1780(d) but not pursuant to *Erie* and federal procedural rules,

4    reflects that a substantial part of the events or omissions giving rise to the claims

5    alleged herein occurred in Riverside County, California.  It is attached as Exhibit

6    1.

7    37.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

8    **FACTUAL ALLEGATIONS**

9    38.    Since 2010, GM has designed, manufactured, distributed, sold, and

10    leased the Class Vehicles.  GM has sold, directly or indirectly, through dealers

11    and other retail outlets, thousands of Class Vehicles equipped with the defective

12    headlights in California and nationwide.

13    39.    Plaintiff is informed and believes, and based thereon alleges, that

14    the Cadillac Vehicles' headlights wear-out or deteriorate causing corrosion and

15    electrical shorts in the headlight components due to accumulated moisture and

16    condensation inside the housing unit.

17    40.    As a result of the Headlight Defect, the Class Vehicles present a

18    safety hazard and are unreasonably dangerous to consumers.  As the Headlight

19    Defect progresses, it can lead to the premature wear or deterioration of the

20    headlight assembly housing seals resulting in accumulation of moisture or

21    condensation.  This in turn results in very dim light output or electrical shorts in

22    the headlight components.  These conditions can thereby contribute to traffic

23    accidents, which can cause personal injury or death.

24    41.    The alleged Headlight Defect is inherent in all Class Vehicles and

25    the Headlight Defect is the same for all Class Vehicles.

26    42.    Dating back to at least 2010, GM was aware of the defects of the

27    headlights.  GM, however, failed to disclose these known defects to consumers.

28    As a result of this failure, Plaintiff and Class Members have been damaged.

**The Headlight Defect Poses an Unreasonable Safety Hazard**

43.     The Headlight Defect causes unsafe conditions, including, but not limited to, very dim light output or electrical shorts in the headlight components. This can result in a loss of visibility.  These conditions can thereby contribute to traffic accidents, which can cause personal injury or death.

44.     Many purchasers and lessees of the Class Vehicles have experienced problems with the headlights.  Complaints filed by consumers with the National Highway Traffic Safety Administration ("NHTSA") and elsewhere online demonstrate that the defect is widespread and dangerous and that it manifests without warning.  The complaints also indicate Defendant's awareness of the problems with the headlights and how potentially dangerous the defective condition is for consumers.  The following are a selection of safety complaints, among the hundreds filed with NHTSA, relating to the Headlight Defect (spelling and grammar mistakes remain as found in the original) (Safercar.gov, *Search for Safety Issues* (June 8, 2017)

**2010 Cadillac SRX**

 a. June 7, 2011 TL* THE CONTACT OWNS A 2010 CADILLAC SRX. THE CONTACT WAS DRIVING APPROXIMATELY 60 MPH WITH THE LOW BEAM HEADLIGHTS IN ACTIVATION HOWEVER, THEY EXHIBITED EXTREMELY POOR LIGHTING. THE HEADLIGHTS FAILED TO ILLUMINATE THE ENTIRE ROAD. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER WHERE THEY DID NOT HAVE THE PROPER EQUIPMENT TO PERFORM A DIAGNOSIS ON THE HEADLIGHTS. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 100.

 b. January 7, 2012 THE LOW BEAMS ON THE CAR ARE VERY POOR, EVEN ON A CLEAR NIGHT. IF DRIVING IN THE RAIN IT IS MUCH WORSE. *TR

 c. March 25, 2013 PASSENGER SIDE HEAD LIGHT HAS ONGOING ELECTRICAL SHORT GOES OUT INDICATES ON THE INFORMATION CENTER THEN WILL RANDOMLY COME BACK ON TOOK IT IN TO THE DEALER NO FIX….*TR

 d. October 29, 2014 BOTH HEADLIGHTS QUIT WORKING, HIGH BEAMS AND LOW BEAMS. STARTED VEHICLE AT NIGHT

AND THE VEHICLE DID NOT HAVE ANY HEADLIGHTS. *TR

e. November 6, 2014 PASSENGER HEADLIGHT (SEALED BEAM) FAILED TO TURN ON 2 DAYS AGO. I ASSUMED IT WAS A BULB, BUT THE DEALER IDENTIFIED IT AS A SHORT DUE TO WATER AND CONDENSATION ACCUMULATION INSIDE THE HOUSING. THE LIGHT DID COME BACK ON FOR A SHORT TIME WHILE DRIVING TO THE DEALERSHIP, BUT WAS OFF AGAIN UPON ARRIVAL. DEALER STATED THE OTHER LIGHT WOULD BE AFFECTED SOON AS WELL, BASED ON WATER INSIDE IT TOO. I HAVE THE HIGHEST LEVEL EXTENDED WARRANTY PLAN (GM MAJOR GUARD), BUT THE SEALED BEAM HEADLIGHTS ARE EXCLUDED FROM THIS PLAN. DEALER QUOTED COST OF $1,800 PER LIGHT, TOTAL OF $3,600 TO REPAIR. THIS IS A DESIGN FLAW, BASED ON NUMEROUS CADILLAC COMPLAINTS AS WELL AS NOTES FOUND ON NHTSA. IN IT'S CURRENT STATE, THE VEHICLE IS NOT DRIVABLE IN LOW VISIBILITY CONDITIONS OR AT NIGHT BECAUSE THE HEADLIGHTS HAVE FAILED DUE TO A DESIGN FLAW. DEALER WILL NOT REPAIR UNDER WARRANTY, AND WITHOUT REPAIR THE VEHICLE WILL NOT EVEN PASS A STATE SAFETY INSPECTION. THIS IS A RECALL WORTHY FAULT WHICH COULD LEAD TO LOSS OF LIFE IF FAULT OCCURS IN LOW VISIBILITY OR NIGHT DRIVING, AND RENDERS THE VEHICLE UNSAFE AS IT WILL NOT PASS STATE SAFETY INSPECTION. PLEASE FORCE GM TO ISSUE RECALL ON THIS ISSUE. I AM CURRENTLY TRYING TO FIGURE OUT HOW TO PAY ALMOST $4,000 ON MY $56K VEHICLE TO GET IT DRIVABLE AGAIN, WHEN IT'S UNDER THE PREMIERE WARRANTY PLAN. THIS POLICY IS UNSATISFACTORY AT BEST. *TR

f. December 1, 2014 I OWN A 2010 CADILLAC SRX. THE PASSENGER HEADLAMP HAS ACCUMULATED SOME CONDENSATION. AS I WAS READING ONLINE THIS IS A KNOWN FLAW OF DESIGN FOR THIS MODEL (EVEN 2013 MODELS) THAT GM IS AWARE OF. AS THE HOLIDAY APPROACHED WE TRAVELED OUT OF TOWN. AS WERE WERE LEAVING I WAS TOLD BY A FAMILY MEMBER THAT MIGHT PASSENGER HEADLAMP WAS INOPERABLE. SO MY GUESS WAS THAT IT WAS EITHER A SAFETY MECHANISM THAT THE CAR WILL SHUT THE LIGHT OUT TO PREVENT A SHORT OR WORST A FIRE. WELL IT WAS COMPLETE OPPOSITE. THIS MORNING MY LOCAL CADILLAC DEALERSHIP HAS CONCLUDED THE THE KNOWN FLAW IN THE HEADLAMP ACTUALLY SHORTED OUT MY BULD. NOW I HAVE RECEIVED A QUOTE FOR OVER $1000++ TO REPLACE A FLAW IN THEIR DESIGN. HOW IS THIS GOOD BUSINESS? IF IT IS A KNOWN ISSUE TAKE CARE OF IT RIGHT? THIS IS A DESIGN FLAW, BASED ON NUMEROUS CADILLAC COMPLAINTS AS WELL AS NOTES FOUND ON THIS VERY NHTSA WEBSITE. IN IT'S CURRENT STATE, THE VEHICLE IS NOT DRIVABLE IN LOW VISIBILITY CONDITIONS OR AT NIGHT BECAUSE THE HEADLIGHTS HAVE FAILED DUE TO

A DESIGN FLAW. DEALER WILL NOT REPAIR UNDER EXTENDED WARRANTY, AND WITHOUT REPAIR THE VEHICLE WILL NOT EVEN PASS A STATE SAFETY INSPECTION. THIS IS A RECALL WORTHY FAULT WHICH COULD LEAD TO LOSS OF LIFE IF FAULT OCCURS IN LOW VISIBILITY OR NIGHT DRIVING, AND RENDERS THE VEHICLE UNSAFE AS IT WILL NOT PASS STATE SAFETY INSPECTION. PLEASE FORCE GM TO ISSUE RECALL ON THIS ISSUE. *JS

g. December 1, 2014 THE RIGHT EXTERIOR LOW BEAM LIGHT WAS OUT AND THE HOUSING UNIT WAS FULL OF EXCESSIVE MOISTURE. ON SEPTEMBER 2, 2014; BULB REPLACED; LIGHT OUT AGAIN BY THE END OF THE MONTH FOR A WEEK THEN ALL OF A SUDDEN BACK ON AGAIN; THEN OUT AGAIN AND ON AGAIN; ESTIMATED COST OF PARTS WERE $1,459 PLUS TAX AND S.S. NOW ONLY THE RUNNING LIGHTS ON THE LEFT AND RIGHT SIDE ARE WORKING. NOW TRY 1,459 PLUS TAX AND S.S.. TIMES 2. THIS IS A DESIGN FLAW. WHY SO MUCH MOISTURE AN ELECTRICAL LIGHTENING UNIT? THE LEFT SIDE DOES NOT HAVE A LOT OF MOISTURE AND THE LIGHT IS NO LONGER WORKING. NOTHING MORE UPSETTING THAN BEING AWAY FROM HOME, ITS DARK AND YOUR VEHICLE HEADLIGHTS WILL NOT COME ON. *JS

h. December 10, 2014 LEFT LOW BEAM LIGHT WARNING CAME ON, TOOK IT TO SHOP TO CHANGE BULB, MECHANIC HAS CHANGED THE BULB, CHANGED THE BALLAST AND IT STILL DOESNT WORK, WHATS THE PROBLEM WITH THE LEFT LIGHT NOT WORKING? *TR

i. December 30, 2014 THERE WAS AN ERROR MESSAGE IN MY DISPLAY TO CHECK PASSENGER LOW BEAM. I HAD THE PASSENGER HEADLAMP REPLACED AT A CADILLAC DEALERSHIP AT A COST OF $369.00. I LEFT THE DEALERSHIP AND DROVE TO MY DESTINATION DURING THE DAYLIGHT HOURS. WHEN I LEFT MY DESTINATION IT HAD GOTTEN DARK AND WHILE DRIVING THE HEADLAMP STOPPED WORKING. I HAVE SINCE FOUND OUT THAT THE SEAL ON THE HEADLAMP IS NO GOOD THEREFORE ALLOWING MOISTURE TO DEVELOP INSIDE THE HEADLAMP WHICH CAUSES THE PROBLEM. I HAVE FOUND THROUGH RESEARCH THAT THIS APPEARS TO BE A DESIGN FLAW WITH THIS MODEL AND MANY PEOPLE HAVE HAD LOSS OF HEADLIGHTS AT TIMES WHEN IT WOULD POSE A SAFETY ISSUE. THE REPAIR IS VERY COSTLY (APPROXIMATELY $1400 PER HEADLAMP). THERE IS MOISTURE IN THE DRIVERS SIDE HEADLAMP AS WELL SO IT STANDS TO REASON THAT IT IS JUST A MATTER OF TIME BEFORE THAT LAMP STOPS WORKING. I ONLY HAVE 73,000 MILES ON THE CAR AND WITHOUT SPENDING $3000 TO RECTIFY THE PROBLEM, I COULD FIND MYSELF WITH NO LIGHTS WHILE DRIVING AT NIGHT. THIS IS IN MY OPINION MOST DEFINITELY A POTENTIAL SAFETY ISSUE! *JS

CLASS ACTION COMPLAINT

j.     January 21, 2015 THE HEAD LIGHT LENS LEAK AT THE SEAM. BOTH HEAD LIGHTS ARE EFFECTED. MOISTURE ACCUMULATES INSIDE THE LENS AND DISTORTS THE HEAD LIGHT BEAM. THIS REDUCES THE CLARITY AND EFFECTIVENESS OF THE HEAD LIGHTS. I HAVE REPLACED ONE HEADLIGHT AT 45,000 MILES. THE HEAD LIGHT SEAL LEAKS WATER. POOR MANUFACTURING AND A SAFETY CONCERN. THERE SHOULD BE A RECALL. *TR

**2011 Cadillac SRX**

k.     February 15, 2012 TL* THE CONTACT OWNS A 2011 CADILLAC SRX. WHILE DRIVING APPROXIMATELY 45 MPH WITH THE HEADLIGHTS ACTIVATED, THE AMBER ILLUMINATION BECAME EXTREMELY DIM WHICH OBSTRUCTED THE VISIBILITY OF THE CONTACT. THE FAILURE RECURRED WHENEVER THE CONTACT WOULD DRIVE WITH HEADLIGHTS ACTIVATED. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER WHO WAS UNABLE TO PROVIDE ASSISTANCE. THE MANUFACTURER WAS NOTIFIED OF THE PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 10,000. UPDATED 07/05/12*LJ HE CONSUMER STATED THE HEADLIGHTS LIGHTS WERE AMBER IN COLOR AND DIDN'T ILLUMINATE PROPERLY WHILE DRIVING AT NIGHT. UPDATED 07/10/12.

l.     January 5, 2013 THE HEADLIGHTS - LOW BEAM - ARE THE WORST. I'VE BEEN DRIVING FOR OVER 40 YEARS. WHEN I COMPLAINED TO THE DEALERSHIP (CRESTVIEW CADILLAC - WEST COVINA, CA) THAT THEY WERE SO BAD I BELIEVED IT IS DANGEROUS TO DRIVE AT NIGHT, THEY SAID THEY DIDN'T GET ANY COMPLAINTS FROM OTHER DRIVERS! I HAVE TO USE MY HIGH BEAMS ALL THE TIME TO BE SAFE. I HAVE HAD PASSENGERS TELL ME I DON'T HAVE MY HEADLAMPS ON!! IT'S A VERY REAL PROBLEM. I HAVE FOUND SEVERAL COMPLAINT PAGES ON LINE. I BELIEVE THEY SHOULD DO A RECALL ON THESE CARS AND FIX THE PROBLEM. IF I GO TO AFTER MARKET, I'M AFRAID ILL NULLIFY MY WARRANTY. PLEASE HELP! *TR

m.     October 23, 2013 THE LOW BEAM HEADLIGHTS ARE VERY DIM. THEY DO NOT REACH OUT LIKE THEY SHOULD. DEALER TELLS ME THAT'S THE WAY THEY ARE, I DO NOT FEEL THEY ARE SAFE!!! *TR

n.     November 7, 2014 TL* THE CONTACT OWNS A 2011 CADILLAC SRX. THE CONTACT STATED THAT MOISTURE WAS ACCUMULATING IN THE FRONT PASSENGER S SIDE HEADLIGHT LENS. AS A RESULT, THE LIGHT BECAME SO DIM THAT IT LOOKED AS IF ONLY ONE HEADLIGHT WAS ACTIVATED. THE VEHICLE WAS TAKEN TO THE DEALER. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE ON THE VEHICLE WAS 67,511.

o.        February 2, 2017 I'VE HAD MY CAR FOR A LITTLE OVER A MONTH AND HONESTLY CANNOT SEE ANYTHING WITH THE HEADLIGHTS. WHEN I FLIP THEM OVER TO BRIGHTS, THEY ILLUMINATE THE ROADWAY PERFECTLY. ONCE I GO BACK TO NORMAL LIGHTING, NOTHING IS LIT. I'VE PULLED OVER A COUPLE OF TIMES TO MAKE SURE THE LIGHTS WERE ACTUALLY ON AND NOTHING WAS COVERING THE HEADLIGHTS. I AM VERY AFRAID THAT AN ACCIDENT WILL OCCUR BECAUSE I CAN'T SEE THE ROADWAY IN FRONT OF ME. PLEASE ADVISE IF THIS IS BEING LOOKED INTO. *TR

p.        January 22, 2016 FRONT HEADLIGHT ASSEMBLIES ARE DEFECTIVE AND ALLOW CONDENSATION TO BUILD UP BEHIND LENS CAUSING HEADLIGHTS TO BE LESS EFFECTIVE AND EVENTUALLY SHORT OUT ELECTRICAL SYSTEM. THIS CONDITION HAS OCCURRED TWICE (ON BOTH FRONT PASSENGER AND DRIVERS SIDE) SINCE I PURCHASED THIS VEHICLE IN 2014, MOST RECENTLY WHILE DRIVING HOME ON THE HIGHWAY AT NIGHT NEARLY CAUSING AN ACCIDENT. THESE DEFECTIVE HEADLIGHT ASSEMBLIES ARE VERY DANGEROUS AND SHOULD BE ADDRESSED, VIA A RECALL, BY CADILLAC ASAP. AN INTERNET SEARCH ON THIS ISSUE REVEALED HUNDRED OF SIMILAR COMPLAINTS AND I SUSPECT CADILLAC IS WELL AWARE OF THIS DEFECTIVE PART.

**2012 Cadillac SRX**

q.        December 22, 2014 TL* THE CONTACT OWNS A 2012 CADILLAC SRX. THE CONTACT STATED THAT WHILE DRIVING AT 35 MPH, THE LOW BEAM HEADLIGHTS FAILED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN. UPDATED 2/9/15*CN

r.        February 13, 2015 TL* THE CONTACT OWNS A 2012 CADILLAC SRX. THE CONTACT STATED THAT THE PASSENGER SIDE HEADLIGHT RECEIVED EXCESSIVE AMOUNTS OF MOISTURE, CAUSING THEM TO SHORT CIRCUIT. THE DEALER STATED THAT THE ENTIRE LIGHTING ASSEMBLY AND SEALS NEEDED TO BE REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 52,485.

s.        February 8, 2016 HEADLIGHTS HAVE WATER IN THEM CAUSING LOSS OF DRIVING VISABILITY AT NIGHT. DEALER REFUSES TO REPLACE THEM UNDER BUMPER TO BUMPER WARRANTY.

t.        April 8, 2016 LOW BEAM HEADLIGHT IS VERY POOR. VERY DIFFICULT TO SEE AND IS VERY DANGEROUS.

u.        December 26, 2016 LOW BEAM HEADLAMPS ARE DISFUNCTIONAL. THEY ARE SO DIM, YOU CANNOT DRIVE

THE VEHICLE AT NIGHT WITHOUT THE AIDE OF THE HIGH BEAM HEADLAMPS.

v.     January 7, 2017 VEHICLE LOW BEAM/DAYTIME RUNNING LIGHTS ILLUMINATION DOES NOT ALLOW YOU TO SEE THE ROAD AT NIGHT MAKING IT A SEVERE SAFETY HAZARD.

**2013 Cadillac SRX**

w.     April 13, 2016 TL* THE CONTACT OWNS A 2013 CADDILIAC SRX. THE CONTACT STATED THAT THE EXTERIOR HEADLAMPS HAD NOT EMITTED ENOUGH LIGHT WHILE DRIVING. THE CONTACT STATED THAT IT WAS DIFFICULT TO VIEW THE ROADS DURING NIGHT TIME DUE TO THE FAILURE. THE VEHICLE WAS TAKEN TO THE DEALER WHERE THE HEADLIGHTS WERE REPLACED HOWEVER, THE FAILURE RECURRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 40,000. THE VIN WAS NOT PROVIDED.

**2014 Cadillac SRX**

x.     June 2, 2014 TL* THE CONTACT OWNS A 2014 CADILLAC SRX. THE CONTACT STATED THAT WHILE DRIVING AT NIGHT WITH THE LOW BEAM HEADLIGHTS ACTIVATED, THE LIGHTS WERE VERY DIM MAKING AND CAUSING THE CONTACT DIFFICULTY IN SEEING PAST 50 FEET IN FRONT OF THE VEHICLE. THE VEHICLE WAS TAKEN TO THE DEALER HOWEVER, THE FAILURE COULD NOT BE DIAGNOSED. THE MANUFACTURER WAS NOT NOTIFIED OF THE ISSUE. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 200.

y.     November 27, 2016 EXTREMELY DIM LOW BEAM HEADLIGHTS. TOOK VEHICLE TO DEALER, THEY CONSULTED WITH GM. GM REPORTED THEY RECOMMENDED CHANGING THE LOW BEAMS, BUT IT MIGHT NOT CORRECT THE PROGRAM. HEADLIGHTS WERE REPLACE, DID NOT IMPROVE SITUATION. ATTEMPTED REPAIR AMOUNTED TO $255.00

z.     February 7, 2017 THE LOW BEAMS ON OUR SRX ARE UNSAFE. WENT TO OUR DEALER AND WAS ADVISED THERE IS NO GM FIX AVAILABLE TO OUR CAR EXCEPT TO BUY BULBS FROM AFTER MARKET SOURCE AND THEY DID NOT RECOMMEND THAT SOLUTION. THE HEAD LIGHTS ON OUR CAR ARE UNSAFE. NOT ENOUGH LIGHT ON ROAD TO DRIVE SAFELY. THIS IS PARTICULARLY TRUE FOR US OLDER DRIVERS. SEEMS GM WOULD PUT GOOD HEADLIGHTS HIGH ON THEIR ENGINEERING REQUIREMENT LIST. THEY DID NOT DO SO WITH THE SRX. THIS MUST BE CORRECTED BEFORE SOMEONE IS HURTS OR KILLED.

aa.     February 22, 2017 LOW BEAM HEADLIGHTS ARE SO DIM THAT THEY ARE AN ACCIDENT IN WAITING. THEY DO NOT PROJECT FAR ENOUGH TO AVOID "OVER DRIVING" THEM. DEALER SAYS THEY ARE ADJUSTED TO SPEC. PEDESTRIANS

ARE AT RISK AS IS THE RISK OF HITTING WILDLIFE. IN AMBIENT LIGHT, CANNOT TELL THE LIGHTS ARE EVEN ON! HAVE INSTALLED BRIGHTER BULBS TO NO AVAIL. THIS PROBLEM IS INHERENT IN THE CADILLAC AND NEEDS TO BE ADDRESSED AT THE NHTSA. PROBLEM NOTED ALL OVER THE WEB.

**GM Had Exclusive Knowledge of the Headlight Defect**

45.     GM had superior and exclusive knowledge of the Headlight Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased the Class Vehicles.

46.     Plaintiff is informed and believes and based thereon alleges that before Plaintiff purchased his Class Vehicle, and since at least 2010, GM knew about the Headlight Defect through sources not available to consumers, including pre-release testing data, early consumer complaints about the Headlight Defect to GM and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, and aggregate data from GM dealers, among other internal sources of aggregate information about the problem.

47.     In fact, in December of 2011, Defendant issued a "Customer Satisfaction Campaign" for the Cadillac Vehicles addressing "a condition in which the halogen headlamp connectors may lose electrical contact with the low beam headlamp."

48.     Further, several Technical Service Bulletins have been released to address the same issue since at least August 2010.  Specifically, in August 2010 Defendant issued Bulletin No. 10-08-42-001A for model year 2010-2011 Cadillac Vehicles to address "Exterior Lighting" and specifically "LOW BEAM HEADLAMP BULB DIAGNOSIS/REPLACEMENT."  Subsequently Defendant released Bulletin No. 10-08-42-001C in February 2012, Bulletin No. 10-08-42-

1   001D in November 2014 and Bulletin No. 10-08-42-001E in May 2015 for the

2   Cadillac Vehicles and all to address the same issue.

3         49.    The existence of the Headlight Defect is a material fact that a

4   reasonable consumer would consider when deciding whether to purchase or lease

5   a vehicle.  Had Plaintiff and other Class Members known that the Class Vehicles

6   were equipped with defective headlights, they would not have purchased or

7   leased the Class Vehicles or would have paid less for them.

8         50.    Reasonable consumers, like Plaintiff, reasonably expect that a

9   vehicle's headlights are safe, will function in a manner that will not pose a safety

10  hazard, and a free from defects.  Plaintiff and Class Members further reasonably

11  expect that GM will not sell or lease vehicles with known safety defects, such as

12  the Headlight Defect, and will disclose any such defects to consumers when it

13  learns of them.  They did not expect GM to fail to disclose the Headlight Defect

14  to them and to continually deny the defect.

15          **GM Has Actively Concealed the Headlight Defect**

16        51.    While GM has been fully aware of the Headlight Defect in the Class

17  Vehicles, it actively concealed the existence and nature of the defect from

18  Plaintiff and Class Members at the time of purchase, lease or repair and

19  thereafter.  Specifically, GM failed to disclose or actively concealed at and after

20  the time of purchase, lease, or repair:

21              (a)    any and all known material defects or material nonconformity

22                     of the Class Vehicles, including the defects relating to the

23                     headlights;

24              (b)    that the Class Vehicles, including their headlights, were not in

25                     good in working order, were defective, and were not fit for

26                     their intended purposes; and

27              (c)    that the Class Vehicles and their headlights were defective,

28                     despite the fact that GM learned of such defects through

1   failure rates, customer complaints, as well as through other

2   internal sources, as early as 2010.

3   52.   When consumers present the Class Vehicles to an authorized GM

4   dealer for repair of the headlights, rather than repair the problem under warranty,

5   GM dealers either inform consumers that their vehicle headlights are functioning

6   properly, or conduct repairs that merely mask the defect, or charge the customer

7   for repairs.

8   53.   To this day, GM has still not modified or redesigned the defective

9   components that continue to cause the Headlight Defect.

10   54.   On information and belief, GM has caused Plaintiff and Class

11   Members to expend money at its dealerships to diagnose, repair or replace the

12   Class Vehicles' headlights, despite GM's knowledge of the Headlight Defect.

13   ## CLASS ACTION ALLEGATIONS

14   55.   Plaintiff brings this lawsuit as a class action on behalf of himself

15   and all others similarly situated as members of the proposed Class pursuant to

16   Federal Rules of Civil Procedure 23(a) and 23(b)(3).  This action satisfies the

17   numerosity, commonality, typicality, adequacy, predominance, and superiority

18   requirements of those provisions.

19   56.   The Class and Sub-Class are defined as:

20   **Nationwide Class**:  All individuals in the United States
21   who purchased or leased any 2010-2015 Cadillac SRX
     vehicle (the "Nationwide Class" or "Class").

22   **California Sub-Class**:  All members of the Nationwide
     Class who reside in the State of California.
23

24   **CLRA Sub-Class**:  All members of the California Sub-
     Class who are "consumers" within the meaning of
25   California Civil Code § 1761(d).

26   **Implied Warranty Sub-Class**:   All members of the
     Nationwide Class who purchased or leased their vehicles
     in the State of California.

27   57.   Excluded from the Class and Sub-Classes are:  (1) Defendant, any

28

1  entity or division in which Defendant has a controlling interest, and their legal
2  representatives, officers, directors, assigns, and successors; (2) the Judge to
3  whom this case is assigned and the Judge's staff; (3) any Judge sitting in the
4  presiding state and/or federal court system who may hear an appeal of any
5  judgment entered; and (4) those persons who have suffered personal injuries as a
6  result of the facts alleged herein.  Plaintiff reserves the right to amend the Class
7  and Sub-Class definitions if discovery and further investigation reveal that the
8  Class and Sub-Classes should be expanded or otherwise modified.

9       58.   Numerosity:  Although the exact number of Class Members is
10  uncertain and can only be ascertained through appropriate discovery, the number
11  is great enough such that joinder is impracticable.  The disposition of the claims
12  of these Class Members in a single action will provide substantial benefits to all
13  parties and to the Court.  The Class Members are readily identifiable from
14  information and records in Defendant's possession, custody, or control, as well
15  as from records kept by the Department of Motor Vehicles.

16       59.   Typicality:  Plaintiff's claims are typical of the claims of the Class
17  in that Plaintiff, like all Class Members, purchased or leased a Class Vehicle
18  designed, manufactured, and distributed by GM, and equipped with the defective
19  headlights.  The representative Plaintiff, like all Class Members, has been
20  damaged by Defendant's misconduct in that he has incurred or will incur the cost
21  of repairing or replacing the defective headlights components.  Furthermore, the
22  factual bases of GM's misconduct are common to all Class Members and
23  represent a common thread resulting in injury to all Class Members.

24       60.   Commonality:  There are numerous questions of law and fact
25  common to Plaintiff and the Class that predominate over any question affecting
26  only individual Class Members.  These common legal and factual issues include
27  the following:

28            (a)   Whether Class Vehicles suffer from defects relating to the

1    headlights;

2    (b)   Whether the defects relating to the headlights constitute an

3          unreasonable safety risk;

4    (c)   Whether Defendant knows about the defects relating to the

5          headlights and, if so, how long Defendant has known of the

6          defect;

7    (d)   Whether the defective nature of the headlights constitutes a

8          material fact;

9    (e)   Whether Defendant has a duty to disclose the defective nature

10         of the headlights to Plaintiff and Class Members;

11   (f)   Whether Plaintiff and the other Class Members are entitled to

12         equitable relief, including but not limited to a preliminary

13         and/or permanent injunction;

14   (g)   Whether Defendant knew or reasonably should have known of

15         the defects relating to the headlights before it sold and leased

16         Class Vehicles to Class Members;

17   (h)   Whether Defendant should be declared financially responsible

18         for notifying all Class Members of the problems with the

19         Class Vehicles and for the costs and expenses of repairing and

20         replacing the defective headlight components;

21   (i)   Whether Defendant is obligated to inform Class Members of

22         their right to seek reimbursement for having paid to diagnose,

23         repair, or replace their defective headlight components;

24   (j)   Whether Defendant breached the implied warranty of

25         merchantability pursuant to the Magnuson-Moss Act; and

26   (k)   Whether Defendant breached the implied warranty of

27         merchantability pursuant to the Song-Beverly Act.

28   61.   Adequate Representation:  Plaintiff will fairly and adequately

protect the interests of the Class Members.  Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

62. <u>Predominance and Superiority</u>:  Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

### FIRST CAUSE OF ACTION

### (Violation of California's Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)

63. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

64. Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the CLRA Sub-Class.

65. Defendant is a "person" as defined by California Civil Code § 1761(c).

66. Plaintiff and CLRA Sub-class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class

1    Vehicles primarily for personal, family, or household use.

2        67.    By failing to disclose and concealing the defective nature of the

3    headlights from Plaintiff and prospective Class Members, Defendant violated

4    California Civil Code § 1770(a), as it represented that the Class Vehicles and

5    their headlights had characteristics and benefits that they do not have, and

6    represented that the Class Vehicles and their headlights were of a particular

7    standard, quality, or grade when they were of another.  *See* Cal. Civ. Code §§

8    1770(a)(5) & (7).

9        68.    Defendant's unfair and deceptive acts or practices occurred

10   repeatedly in Defendant's trade or business, were capable of deceiving a

11   substantial portion of the purchasing public, and imposed a serious safety risk on

12   the public.

13       69.    Defendant knew that the Class Vehicles and their headlights

14   suffered from an inherent defect, were defectively designed, and were not

15   suitable for their intended use.

16       70.    As a result of their reliance on Defendant's omissions, owners

17   and/or lessees of the Class Vehicles suffered an ascertainable loss of money,

18   property, and/or value of their Class Vehicles.  Additionally, as a result of the

19   Headlight Defect, Plaintiff and Class Members were harmed and suffered actual

20   damages in that the Class Vehicles' headlight components are substantially

21   certain to fail before their expected useful life has run.

22       71.    Defendant was under a duty to Plaintiff and Class Members to

23   disclose the defective nature of the headlights and/or the associated repair costs

24   because:

25            (a)    Defendant was in a superior position to know the true state of

26                   facts about the safety defect in the Class Vehicles' headlights;

27            (b)    Plaintiff and Class Members could not reasonably have been

28                   expected to learn or discover that their headlights had a

CLASS ACTION COMPLAINT

dangerous safety defect until it manifested; and

(c)   Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn of or discover the safety defect.

72.    In failing to disclose the defective nature of the headlights, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

73.    The facts Defendant concealed from or failed to disclose to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less.  Had Plaintiff and Class Members known that the Class Vehicles' headlights were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

74.    Plaintiff and Class Members are reasonable consumers who do not expect the headlights installed in their vehicles to exhibit problems such as the extremely premature wear, and frequent replacement or repair, of the vehicle's headlights.

75.    This is the reasonable and objective consumer expectation relating to vehicle headlights.

76.    As a result of Defendant's conduct, Plaintiff and Class Members were harmed and suffered actual damages in that, on information and belief, the Class Vehicles experienced and will continue to experience problems such as the extremely premature wear, and frequent replacement or repair, of the vehicle's headlights.

77.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and Class Members suffered and will continue to suffer actual damages.

78.    Plaintiff and the Class are entitled to equitable relief.

79.     Plaintiff provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a).  Defendant failed to provide appropriate relief for their violations of the CLRA within 30 days.  Therefore, Plaintiff seeks monetary, compensatory, and punitive damages, in addition to injunctive and equitable relief.

## SECOND CAUSE OF ACTION

### (Violation of California Business & Professions Code § 17200, *et seq.*)

80.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

81.     Plaintiff brings this cause of action on behalf of himself and on behalf of the California Sub-Class.

82.     As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Additionally, as a result of the Headlight Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' headlight components are substantially certain to fail before their expected useful life has run.

83.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

84.     Plaintiff and Class Members are reasonable consumers who do not expect their headlights to exhibit problems such as the extremely premature wear, and frequent replacement or repair, of the vehicle's headlights.

85.     Defendant knew the Class Vehicles and their headlights suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

86.     In failing to disclose the defects with the headlights, Defendant has knowingly and intentionally concealed material facts and breached its duty not to

1  do so.

2      87.    Defendant was under a duty to Plaintiff and Class Members to

3  disclose the defective nature of the Class Vehicles and their headlights because:

4          (a)    Defendant was in a superior position to know the true state of

5                 facts about the safety defect in the Class Vehicles' headlights;

6          (b)    Defendant made partial disclosures about the quality of the

7                 Class Vehicles without revealing the defective nature of the

8                 Class Vehicles and their headlights; and

9          (c)    Defendant actively concealed the defective nature of the Class

10                Vehicles and their headlights from Plaintiff and the Class.

11     88.    The facts Defendant concealed from or did not disclose to Plaintiff

12  and Class Members are material in that a reasonable person would have

13  considered them to be important in deciding whether to purchase or lease Class

14  Vehicles.  Had Plaintiff and other Class Members known that the Class Vehicles'

15  headlights were defective and posed a safety hazard, then Plaintiff and the other

16  Class Members would not have purchased or leased Class Vehicles equipped

17  with the headlights, or would have paid less for them.

18     89.    Defendant continued to conceal the defective nature of the Class

19  Vehicles and their headlights even after Class Members began to report

20  problems.  Indeed, Defendant continues to cover up and conceal the true nature

21  of the problem.

22     90.    Defendant's conduct was and is likely to deceive consumers.

23     91.    Defendant's acts, conduct and practices were unlawful, in that they

24  constituted:

25          (a)    Violations of California's Consumers Legal Remedies Act;

26          (b)    Violations of the Song-Beverly Consumer Warranty Act;

27          (c)    Violations of the Magnuson-Moss Warranty Act.

28     92.    By its conduct, Defendant has engaged in unfair competition and

1  unlawful, unfair, and fraudulent business practices.

2  93.  Defendant's unfair or deceptive acts or practices occurred

3  repeatedly in Defendant's trade or business, and were capable of deceiving a

4  substantial portion of the purchasing public.

5  94.  As a direct and proximate result of Defendant's unfair and deceptive

6  practices, Plaintiff and the Class have suffered and will continue to suffer actual

7  damages.

8  95.  Defendant has been unjustly enriched and should be required to

9  make restitution to Plaintiff and the Class pursuant to §§ 17203 and 17204 of the

10 Business & Professions Code.

**THIRD CAUSE OF ACTION**

11

**(Breach of Implied Warranty Pursuant to Song-Beverly**

12

**Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1,** *et seq.***)**

13

14 96.  Plaintiff incorporates by reference the allegations contained in the

15 preceding paragraphs of this Complaint.

16 97.  Plaintiff brings this cause of action against Defendant on behalf of

17 himself and on behalf of the members of the Implied Warranty Sub-Class.

18 98.  Defendant was at all relevant times the manufacturer, distributor,

19 warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to

20 know of the specific use for which the Class Vehicles were purchased or leased.

21 99.  Defendant provided Plaintiff and Class Members with an implied

22 warranty that the Class Vehicles and their components and parts are

23 merchantable and fit for the ordinary purposes for which they were sold.

24 However, the Class Vehicles are not fit for their ordinary purpose of providing

25 reasonably reliable and safe transportation because, inter alia, the Class Vehicles

26 and their headlights suffered from an inherent defect at the time of sale and

27 thereafter are not fit for their particular purpose of providing safe and reliable

28 transportation.

100.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things:  (i) a warranty that the Class Vehicles and their headlights were manufactured, supplied, distributed, and/or sold by GM were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their headlights would be fit for their intended use while the Class Vehicles were being operated.

101.   Contrary to the applicable implied warranties, the Class Vehicles and their headlights at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including but not limited to the defective design of their headlights.

102.   The alleged Headlight Defect is inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

103.   As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Headlight Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' headlight components are substantially certain to fail before their expected useful life has run.

104.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## FOURTH CAUSE OF ACTION

### (Breach of Implied Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.*)

105.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

106.   Plaintiff brings this cause of action on behalf of himself and on behalf of the Nationwide Class, or, in the alternative, on behalf of the California Sub-Class, against Defendant.

107.   The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

108.   Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

109.   Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

110.   GM impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things:  (i) a warranty that the Class Vehicles and their headlights were manufactured, supplied, distributed, and/or sold by GM were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their headlights would be fit for their intended use while the Class Vehicles were being operated.

111.   Contrary to the applicable implied warranties, the Class Vehicles and their headlights at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including but not limited to the defective design of their headlights.

112.   Defendant's breach of implied warranties has deprived Plaintiff and Class Members of the benefit of their bargain.

113.   The amount in controversy of Plaintiff' individual claims meets or exceeds the sum or value of $25,000.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

114.   Defendant has been afforded a reasonable opportunity to cure its

1   breach, including when Plaintiff and Class Members brought their vehicles in for

2   diagnoses and repair of the headlights.

3       115.   As a direct and proximate cause of Defendant's breach of implied

4   warranties, Plaintiff and Class Members sustained damages and other losses in

5   an amount to be determined at trial.  Defendant's conduct damaged Plaintiff and

6   Class Members, who are entitled to recover actual damages, consequential

7   damages, specific performance, diminution in value, costs, attorneys' fees,

8   and/or other relief as appropriate.

9       116.   As a result of Defendant's violations of the Magnuson-Moss

10  Warranty Act as alleged herein, Plaintiff and Class Members have incurred

11  damages.

12                          **RELIEF REQUESTED**

13      117.   Plaintiff, on behalf of himself, and all others similarly situated,

14  request the Court to enter judgment against Defendant, as follows:

15          (a)   An order certifying the proposed Class and Sub-Classes,

16                designating Plaintiff as named representative of the Class, and

17                designating the undersigned as Class Counsel;

18          (a)   A declaration that Defendant is financially responsible for

19                notifying all Class Members about the defective nature of the

20                headlights, including the need for periodic maintenance;

21          (b)   An order enjoining Defendant from further deceptive

22                distribution, sales, and lease practices with respect to Class

23                Vehicles; compelling Defendant to issue a voluntary recall for

24                the Class Vehicles pursuant to.  49 U.S.C. § 30118(a);

25                compelling Defendant to remove, repair, and/or replace the

26                Class Vehicles' defective headlight components with suitable

27                alternative product(s) that do not contain the defects alleged

28                herein; enjoining Defendant from selling the Class Vehicles

with the misleading information; and/or compelling
Defendant to reform its warranty, in a manner deemed to be
appropriate by the Court, to cover the injury alleged and to
notify all Class Members that such warranty has been
reformed;

(c)    A declaration requiring Defendant to comply with the various
provisions of the Song-Beverly Act alleged herein and to
make all the required disclosures;

(d)    An award to Plaintiff and the Class for compensatory,
exemplary, and statutory damages, including interest, in an
amount to be proven at trial;

(e)    Any and all remedies provided pursuant to the Song-Beverly
Act, including California Civil Code section 1794;

(f)    Any and all remedies provided pursuant to the Magnuson-
Moss Warranty Act;

(g)    A declaration that Defendant must disgorge, for the benefit of
the Class, all or part of the ill-gotten profits it received from
the sale or lease of its Class Vehicles, or make full restitution
to Plaintiff and Class Members;

(h)    An award of attorneys' fees and costs, as allowed by law;

(i)    An award of attorneys' fees and costs pursuant to California
Code of Civil Procedure § 1021.5;

(j)    An award of pre-judgment and post-judgment interest, as
provided by law;

(k)    Leave to amend the Complaint to conform to the evidence
produced at trial; and

(l)    Such other relief as may be appropriate under the
circumstances.

CLASS ACTION COMPLAINT

1     ///

2     ///

3     ///

4     ///

5     **DEMAND FOR JURY TRIAL**

6         118.   Pursuant to Federal Rule of Civil Procedure 38(b) and Southern

7     District of California Local Rule 38.1, Plaintiff demands a trial by jury of any

8     and all issues in this action so triable.

9

10    Dated:  June 9, 2017                     Respectfully submitted,

11                                             Capstone Law APC

12

13                                      By: /s/ Jordan L. Lurie
                                             Jordan L. Lurie
14                                           Tarek H. Zohdy
                                             Cody R. Padgett
15                                           Karen L. Wallace

16                                           Attorneys for Plaintiff Chester Steele

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

# EXHIBIT 1

DocuSign Envelope ID: 4b921370-6611-4391-86F3-D3445682AB04

Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

Attorneys for Plaintiff
Chester Steele

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHESTER STEELE, individually, and on behalf of a class of similarly situated individuals, | Case No.: |
| Plaintiff, | **DECLARATION OF CHESTER STEELE IN SUPPORT OF VENUE FOR CLASS ACTION COMPLAINT PURSUANT TO CIVIL CODE SECTION 1780(d)** |
| v. | |
| GENERAL MOTORS LLC, a Delaware Limited Liability Company | |
| Defendant. | |

DocuSign Envelope ID: 4b921970-6B14-439F-88F3-D3A4568288AH

# DECLARATION OF CHESTER STEELE

I, CHESTER STEELE, declare under penalty of perjury as follows:

1.    I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information and belief, and as to those matters I believe them to be true.  I am over the age of eighteen, a citizen of the State of California, and a Plaintiff in this action.

2.    Pursuant to California Civil Code section 1780(d), this Declaration is submitted in support of Plaintiff's Selection of Venue for the Trial of Plaintiff's Cause of Action alleging violation of California's Consumers Legal Remedies Act.

3.    I purchased my 2010 Cadillac SRX, which is the subject of this action, from Jessup Auto Plaza Cathedral City, an authorized GM dealer in Riverside County, California.

4.    Therefore, this Court is a proper venue for the prosecution of my California's Consumers Legal Remedies Act cause of action because a substantial portion of the events giving rise to my claims occurred here.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.

Executed on June 6/8/2017, 2017 in _____ yreka _____, California.

DocuSigned by:

*Chester Steele*

0F5A84C2164845B...

Chester Steele