Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 556-4811
Facsimile:  (310) 943-0396

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHESTER STEELE, FRANCISCO CAMPOS and ANGELINE KROLNIK-CAMPOS, individually, and on behalf of a class of similarly situated individuals,<br><br>        Plaintiffs,<br><br>     v.<br><br>GENERAL MOTORS LLC, a Delaware limited liability company.<br><br>        Defendant. | Case No.: 2:17-cv-04323<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Violations of California's Consumers Legal Remedies Act<br>(2)  Violations of Unfair Competition Law<br>(3)  Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act<br>(4)  Breach of Implied Warranty pursuant to the Magnuson-Moss Warranty Act<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.     Plaintiffs Chester Steele, Francisco Campos, and Angeline Krolnik-Campos ("Plaintiffs") bring this action for themselves and all persons in the United States who purchased or leased any 2010-2015 Cadillac SRX (collectively, "Cadillac Vehicles" or "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and serviced by General Motors LLC, a Delaware limited liability company ("GM" or "Defendant").

2.     This case arises out of a defect in the Class Vehicles' headlights that causes the headlights to wear-out and fail unexpectedly and prematurely.

3.     Specifically, on information and belief, Plaintiffs allege that the seals used in Class Vehicles' headlights' exterior housing units wear-out or deteriorate, allowing moisture to accumulate and condense from the air that flows through their vents. The design of the housing units' vents is also defective in that it further compromises the flow and exchange of air through the improperly sealed headlights. The pooling condensation causes the headlights to malfunction or the bulbs to fail, by corroding lamp assembly components like the igniter and/or causing electrical shorts, among other problems (the "Headlight Defect").

4.     On or around June 2012, in fact, the New York times published an article regarding an investigation by the National Highway Traffic Safety Administration ("NHTSA") complaints about low-beam headlight failures in almost 250,000 2007-2009 Saturn Outlooks and GMC Acadias.[1] "According to a bulletin from General Motors," the newspaper reported, "the problem, which only affects vehicles with halogen headlights, may also exist in about 93,000 more vehicles, including models from 2010 as well as the 2008-10 Cadillac CTS

_____
[1] Christopher Jensen, "Government Considers Investigating G.M. Crossovers for Headlight Failures," The New York Times (June 29, 2012 at 10:52am), https://wheels.blogs.nytimes.com/2012/06/29/government-considers-investigating-g-m-crossovers-for-headlight-failures/?mcubz=0.

1   and 2010 Cadillac SRX."

2       5.      As a result of the Headlight Defect, the Class Vehicles present a

3   safety hazard and are unreasonably dangerous to consumers.  As it progresses,

4   the Headlight Defect can result in very dim light output or no light at all.  Such

5   malfunctions will necessarily result in low visibility at best, which can contribute

6   to injurious, or even fatal, traffic accidents.  Hundreds of Class Members have

7   complained to NHTSA and in informal forums online, some of which Defendant

8   or its agents monitor, about the Headlight Defect and associated safety

9   concerns.[2] For example, Auto Recalls for Consumers (ARFC) is a website that

10  re-publishes NHTSA complaints. The site included a complaint by the owner of

11  a 2010 SRX owner, originally published on June 7, 2011, regarding problems

12  with the car's headlights:

> THE CONTACT OWNS A 2010 CADILLAC SRX. THE CONTACT
> WAS DRIVING APPROXIMATELY 60 MPH WITH THE LOW BEAM
> HEADLIGHTS IN ACTIVATION HOWEVER, THEY EXHIBITED
> EXTREMELY POOR LIGHTING. THE HEADLIGHTS FAILED TO
> ILLUMINATE THE ENTIRE ROAD. THE VEHICLE WAS TAKEN TO
> AN AUTHORIZED DEALER WHERE THEY DID NOT HAVE THE
> PROPER EQUIPMENT TO PERFORM A DIAGNOSIS ON THE
> HEADLIGHTS. THE VEHICLE WAS NOT REPAIRED. THE
> MANUFACTURER WAS MADE AWARE OF THE PROBLEM. THE
> APPROXIMATE FAILURE MILEAGE WAS 100.[3]

---

[2] For example, threads posted by consumers on an online forum called CadillacOwners.com includes responses by Cadillac Customer Service Representatives. *See, e.g.*, "Headlight Condensation," posted by Cataract regarding his 2007 STS-V and initiated on June 11, 2010, available at http://www.cadillacforums.com/forums/cadillac-sts-v-series-forum/202351-headlight-condensation.html (last visited Sep. 15, 2017).

[3] The incident occurred in Palestine, TX, and was posted on June 7, 2011, *available at* http://www.arfc.org/complaints/2010/cadillac/srx/10405415.aspx (last visited Sep. 15, 2017).

FIRST AMENDED CLASS ACTION COMPLAINT

6.      Another more recent complaint, posted on November 11, 2016 at CarProblemZoo.com, exemplifies not only the persistence of the problems, but also the risk associated with them: "The headlights on the 2010 Srx fill with moisture decreasing the light and make it unsafe to operate the vehicle at night without using high beams. This problem has caused repeated stop by police to warn of low visibility with the affected headlights."[4]

7.      Since 2011, in an effort to address owner complaints regarding the Headlight Defect, GM has issued a Customer Satisfaction Program and several Technical Service Bulletins ("TSBs"), as discussed below.  However, these efforts have been entirely inadequate in resolving the Headlight Defect or providing relief.

8.      In fact, rather than redesigning the defective components, GM purports to "repair" the Class Vehicles by simply replacing defective components with the same defective components.  Further, Class Vehicle owners incur out-of-pocket costs for these repairs because GM refuses to extend the warranty to cover them or issue a recall to prevent them.  GM thus unfairly shifts the costs to the Class Members and benefits from the revenue generated by repeated repairs. Accordingly, consumers will be required to pay hundreds, if not thousands, of dollars to repair or replace the headlights and related components as a result of the Headlight Defect, and GM is unjustly enriched at their expense.

9.      On information and belief, all the Class Vehicles are equipped with the same or substantially identical headlight assemblies, and the Headlight Defect is the same for all Class Vehicles.

10.     Beginning as early as 2010, through consumer complaints and dealership repair orders, among other internal sources in GM's exclusive custody

_____

[4] "Headlight problems of the 2010 Cadillac SRX: Failure Date: 11/09/2016," available at http://www.carproblemzoo.com/cadillac/srx/headlights-problems2.php (last visited Sep. 15, 2017).

1   and control, Defendant knew or should have known that the Class Vehicles and

2   their headlights had a design defect that adversely affects the Class Vehicles'

3   operation and creates safety hazards.  Nevertheless, Defendant has actively

4   concealed and failed to disclose this defect to Plaintiffs and Class Members prior

5   to the time of purchase or lease and thereafter.

6          11.    On information and belief, Defendant's corporate officers, directors,

7   or managers knew about the Headlight Defect and failed to disclose it to

8   Plaintiffs and Class Members, at the time of sale, lease, repair, and thereafter.

9          12.    Because GM will not notify Class Members that the headlights are

10  defective, Plaintiffs and Class Members (as well as members of the general

11  public) remain subject to symptoms that create dangerous and unexpected

12  driving hazards.

13         13.    The alleged Headlight Defect is inherent and was present in all the

14  Class Vehicles at the time of sale.

15         14.    GM knew about and concealed the inherent Headlight Defect, along

16  with the attendant dangerous safety concerns, from Plaintiffs and Class

17  Members, at the time of sale, lease, repair, and thereafter.  In fact, instead of

18  resolving the defects in the headlights, GM either refused to acknowledge their

19  existence or performed repairs that simply masked their effects.

20         15.    If they had known about these defects at the time of sale or lease,

21  Plaintiffs and Class Members would have paid less for the Class Vehicles or

22  would not have purchased or leased them at all.

23         16.    As a result of their reliance on Defendant's omissions, owners

24  and/or lessees of the Class Vehicles suffered an ascertainable loss of money,

25  property, and/or value of their Class Vehicles, including expenses for headlight-

26  related repairs.  Additionally, as a result of the Headlight Defect, Plaintiffs and

27  Class Members were harmed and suffered actual damages in that the Class

28  Vehicles' headlight assemblies and their components are substantially certain to

1    fail before their expected useful lives have run.

2                              **THE PARTIES**

3    **Plaintiff Chester Steele**

4         17.    Plaintiff Chester Steele ("Plaintiff") is a California citizen who

5    resides in Yreka, California.

6         18.    On or around October 12, 2012, Plaintiff purchased a Certified Pre-

7    Owned 2010 Cadillac SRX from Jessup Auto Plaza Cathedral City, an

8    authorized Cadillac dealer in Riverside County.

9         19.    Prior to purchasing his Class Vehicle, Plaintiff saw television

10   commercials, magazine advertisements, magazine reviews, reviewed the

11   windshield "Monroney" sticker provided by GM, and test drove the SRX with a

12   dealership employee.

13        20.    Plaintiff Steele's Class Vehicle has and continues to exhibit the

14   Headlight Defect described herein, and Plaintiff has suffered a loss as a result.

15        21.    Specifically, during the first week of October 2016, Plaintiff Steele

16   drove from his home in Yreka to Palm Springs.  Before he left, he noticed

17   condensation in both headlights, which made the lenses look gray.  He polished

18   the headlights to diminish the discoloration but the fogging remained. It began to

19   rain while he was driving, and he noticed a significantly increased accumulation

20   of moisture in the headlamp assemblies.  Finally, at the end of January 2017, the

21   driver side bulb failed at approximately 51,600 miles. As a result of this failure,

22   Plaintiff was forced to drive in the dark with only one headlight.

23        22.    On or about January 27, 2017, Plaintiff Steele complained to Jessup

24   Auto Plaza, an authorized GM repair facility, about his failed headlight.  The

25   dealer advised that moisture in the assembly had corroded the igniter, causing it

26   to short out.  The dealer charged Mr. Steele $660.29 to repair the driver side

27   headlight. The dealer did not address the moisture in the passenger-side

28   headlight.

23.   Plaintiff Steele continues to experience issues headlights, whereby both headlights are cloudy, and fears they can dim or fail at any time without warning.

24.   Plaintiff Steele purchased his vehicle primarily for personal, family, or household use.  GM manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

25.   Had GM disclosed its knowledge of the Headlight Defect before he purchased his vehicle, Plaintiff Steele would have seen or heard such disclosures and been aware of them.  Indeed, GM's omissions were material to him.  Like all members of the Class, Plaintiff Steele would have paid less for his Class Vehicle or would not have purchased it, had he known of the Headlight Defect.

26.   At all times, Plaintiff Steele, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Plaintiffs Francisco Campos and Angeline Krolnik-Campos**

27.   Plaintiffs Francisco Campos and Angeline Krolnik-Campos ("Plaintiffs") are California citizens who reside in North Hills, California.

28.   In or around June 2014, Plaintiffs purchased a used 2011 Cadillac SRX with approximately 4,000 miles on the odometer from W.I. Simonson, an authorized Mercedes Benz dealer in Los Angeles County.

29.   Prior to purchasing their Class Vehicle, Plaintiffs reviewed GM's SRX marketing materials, including the vehicle's brochure, and Plaintiff Krolnik-Campos test drove the vehicle at an auto show before deciding to purchase it.

30.   Plaintiffs' Class Vehicle has and continues to exhibit the Headlight Defect described herein and Plaintiffs have suffered a loss as a result.

31.   Specifically, in or around February 2017, at approximately 27,000 miles, Plaintiff Krolnik-Campos noticed condensation in the headlights, which

worsened noticeably when it rained, and complained to Martin Cadillac, an authorized GM dealership in Santa Monica, California.  The service advisor told her there was nothing they could do about it and cautioned that they would have to remove the bumper in the event the headlights had to be replaced.

32.    In or around May 2017, Plaintiffs had both headlights replaced by Martin Cadillac at a cost to them of approximately $1,600.

33.    Plaintiffs do not believe that replacing the headlights on their Class Vehicle has resolved the problem and fear the headlights may fail at any time without warning.

34.    Plaintiffs purchased their vehicle primarily for personal, family, or household use.  GM manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

35.    Had GM disclosed its knowledge of the Headlight Defect before they purchased the vehicle, Plaintiffs would have seen or heard such disclosures and been aware of them.  Indeed, GM's omissions were material to Plaintiffs. Like all members of the Class, Plaintiffs would have paid less for their Class Vehicle or would not have purchased it all, had they known of the Headlight Defect.

36.    At all times, Plaintiffs, like all Class Members, have driven their vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Defendant**

37.    Defendant General Motors LLC is a Delaware limited liability company with its principle place of business located at 300 Renaissance Center, Detroit, Michigan.  General Motors LLC is registered to do business in the State of California.  The sole member and owner of General Motors LLC is General Motors Holdings LLC.  General Motors Holdings LLC is a Delaware limited liability company with its principle place of business in the State of Michigan.

1  General Motors Holdings LLC's only member is General Motor Company, a

2  Delaware corporation with its principal place of business in the State of

3  Michigan.  General Motors Company has 100% ownership interest in General

4  Motors Holdings LLC.

5       38.    General Motors LLC, through its various entities, designs,

6  manufactures, markets, distributes, services, repairs, sells, and leases passenger

7  vehicles, including the Class Vehicles, nationwide and in California.  General

8  Motors LLC is the warrantor and distributor of the Class Vehicles in the United

9  States.

10       39.    At all relevant times, Defendant was and is engaged in the business

11  of designing, manufacturing, constructing, assembling, marketing, distributing,

12  and selling automobiles and motor vehicle components in Riverside County and

13  throughout the United States of America.

14  **JURISDICTION**

15       40. This is a class action.

16       41.    Plaintiffs and other members of the Proposed Class are citizens of

17  states different from the home state of Defendant.

18       42.    On information and belief, aggregate claims of individual Class

19  Members exceed $5,000,000.00 in value, exclusive of interest and costs.

20       43. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

21  **VENUE**

22       44.    GM, through its business of distributing, selling, and leasing the

23  Class Vehicles, has established sufficient contacts in this district such that

24  personal jurisdiction is appropriate.  Defendant is deemed to reside in this district

25  pursuant to 28 U.S.C. § 1391(a).

26       45.    In addition, a substantial part of the events or omissions giving rise

27  to these claims took place in this district.  Plaintiff Steele purchased his 2010

28  Cadillac SRX, which is the subject of this action, from Jessup Auto Plaza

FIRST AMENDED CLASS ACTION COMPLAINT

Cathedral City, an authorized GM dealer in Riverside County, California. Plaintiff Campos and Plaintiff Kolnik-Campos purchased their 2011 Cadillac SRX from W.I. Simonson, an authorized Mercedes dealership in Los Angeles, County, California.

46.     In addition, Plaintiff Steele's Declaration, as required under California Civil Code section 1780(d) but not pursuant to *Erie* and federal procedural rules, reflects that a substantial part of the events or omissions giving rise to the claims alleged herein occurred in Riverside County, California.  It is attached as Exhibit 1.

47. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS

48.     Since 2010, GM has designed, manufactured, distributed, sold, and leased the Class Vehicles.  GM has sold, directly or indirectly, through dealers and other retail outlets, thousands of Class Vehicles equipped with the defective headlights in California and nationwide.

49.     Plaintiffs are informed and believe, and based thereon allege, that the seals in the Class Vehicles' headlight assemblies wear-out or deteriorate unexpectedly and prematurely, allowing moisture to accumulate and damage the assemblies' internal components. Plaintiffs are also informed and believe, and thereon allege, that the design of the vents that allow air flow to maintain pressure and prevent the lenses from cracking increases the tendency for water to accumulate and condense the housing units. These defects result in damage to assembly components, such as corroding igniters and burnt-out bulbs.

50.     The Class Vehicles are unreasonably dangerous to consumers because the Headlight Defect prevents their safe operation.  For example, as the Headlight Defect progresses, the excessive accumulation of water or condensation can damage crucial components – like the igniter and the bulb - resulting in diminished light output or catastrophic failure.  Malfunctioning or

inoperative headlights impair drivers' ability to operate the vehicles safely and contribute to accidents, particularly after dusk, before dawn, or in inclement weather by decreasing drivers' visibility and making the Class Vehicles themselves more difficult for other drivers or pedestrians to see.

51.     The alleged Headlight Defect is inherent in all Class Vehicles, and the Headlight Defect is the same for all Class Vehicles.

52.     Since at least 2010, GM was aware of the defective nature of the headlights but failed to it to consumers.  This failure has damaged Plaintiffs and Class Members.

### The Headlight Defect Poses an Unreasonable Safety Hazard

53.     As discussed above, the Headlight Defect impairs or prevents putative Class Members from driving the Class Vehicles safely. Hazards include very dim light output that diminishes visibility or catastrophic failures that effectively preclude visibility.  Driving with poor visibility due to such conditions presents danger to putative Class Members, other drivers, and pedestrians by significantly increasing the risk of collisions. No consumer expects to purchase or lease a vehicle that may be non-operational at before dawn, after dusk, or in inclement weather, and the safety risk is objectively unreasonable.

54.     Many purchasers and lessees of the Class Vehicles have experienced problems with the headlights.  Complaints filed by consumers with NHTSA and elsewhere online demonstrate that the defect is widespread and dangerous and that it manifests without warning.  The complaints also indicate Defendant's awareness of the headlights' defective nature and its attendant hazards for consumers and the general public.  The following are a selection of complaints, among the hundreds filed with NHTSA, relating to the Headlight Defect, its persistence, and its associated risks (spelling and grammar mistakes remain as found in the original) (Safercar.gov, *Search for Safety Issues* (June 8, 2017).

**2010 Cadillac SRX**

a. June 7, 2011 TL* THE CONTACT OWNS A 2010 CADILLAC SRX. THE CONTACT WAS DRIVING APPROXIMATELY 60 MPH WITH THE LOW BEAM HEADLIGHTS IN ACTIVATION HOWEVER, THEY EXHIBITED EXTREMELY POOR LIGHTING. THE HEADLIGHTS FAILED TO ILLUMINATE THE ENTIRE ROAD. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER WHERE THEY DID NOT HAVE THE PROPER EQUIPMENT TO PERFORM A DIAGNOSIS ON THE HEADLIGHTS. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 100.

b. January 7, 2012 THE LOW BEAMS ON THE CAR ARE VERY POOR, EVEN ON A CLEAR NIGHT. IF DRIVING IN THE RAIN IT IS MUCH WORSE. *TR

c. March 25, 2013 PASSENGER SIDE HEAD LIGHT HAS ONGOING ELECTRICAL SHORT GOES OUT INDICATES ON THE INFORMATION CENTER THEN WILL RANDOMLY COME BACK ON TOOK IT IN TO THE DEALER NO FIX….*TR

d. October 29, 2014 BOTH HEADLIGHTS QUIT WORKING, HIGH BEAMS AND LOW BEAMS. STARTED VEHICLE AT NIGHT AND THE VEHICLE DID NOT HAVE ANY HEADLIGHTS. *TR

e. November 6, 2014 PASSENGER HEADLIGHT (SEALED BEAM) FAILED TO TURN ON 2 DAYS AGO. I ASSUMED IT WAS A BULB, BUT THE DEALER IDENTIFIED IT AS A SHORT DUE TO WATER AND CONDENSATION ACCUMULATION INSIDE THE HOUSING. THE LIGHT DID COME BACK ON FOR A SHORT TIME WHILE DRIVING TO THE DEALERSHIP, BUT WAS OFF AGAIN UPON ARRIVAL. DEALER STATED THE OTHER LIGHT WOULD BE AFFECTED SOON AS WELL, BASED ON WATER INSIDE IT TOO. I HAVE THE HIGHEST LEVEL EXTENDED WARRANTY PLAN (GM MAJOR GUARD), BUT THE SEALED BEAM HEADLIGHTS ARE EXCLUDED FROM THIS PLAN. DEALER QUOTED COST OF $1,800 PER LIGHT, TOTAL OF $3,600 TO REPAIR. THIS IS A DESIGN FLAW, BASED ON NUMEROUS CADILLAC COMPLAINTS AS WELL AS NOTES FOUND ON NHTSA. IN IT'S CURRENT STATE, THE VEHICLE IS NOT DRIVABLE IN LOW VISIBILITY CONDITIONS OR AT NIGHT BECAUSE THE HEADLIGHTS HAVE FAILED DUE TO A DESIGN FLAW. DEALER WILL NOT REPAIR UNDER WARRANTY, AND WITHOUT REPAIR THE VEHICLE WILL NOT EVEN PASS A STATE SAFETY INSPECTION. THIS IS A RECALL WORTHY FAULT WHICH COULD LEAD TO LOSS OF LIFE IF FAULT OCCURS IN LOW VISIBILITY OR NIGHT DRIVING, AND RENDERS THE VEHICLE UNSAFE AS IT WILL NOT PASS STATE SAFETY INSPECTION. PLEASE FORCE GM TO ISSUE RECALL ON THIS ISSUE. I AM CURRENTLY TRYING TO FIGURE OUT HOW TO PAY ALMOST $4,000 ON MY $56K VEHICLE TO GET IT DRIVABLE AGAIN, WHEN IT'S UNDER THE PREMIERE

WARRANTY PLAN. THIS POLICY IS UNSATISFACTORY AT BEST. *TR

f.  December 1, 2014 I OWN A 2010 CADILLAC SRX. THE PASSENGER HEADLAMP HAS ACCUMULATED SOME CONDENSATION. AS I WAS READING ONLINE THIS IS A KNOWN FLAW OF DESIGN FOR THIS MODEL (EVEN 2013 MODELS) THAT GM IS AWARE OF. AS THE HOLIDAY APPROACHED WE TRAVELED OUT OF TOWN. AS WERE WERE LEAVING I WAS TOLD BY A FAMILY MEMBER THAT MIGHT PASSENGER HEADLAMP WAS INOPERABLE. SO MY GUESS WAS THAT IT WAS EITHER A SAFETY MECHANISM THAT THE CAR WILL SHUT THE LIGHT OUT TO PREVENT A SHORT OR WORST A FIRE. WELL IT WAS COMPLETE OPPOSITE. THIS MORNING MY LOCAL CADILLAC DEALERSHIP HAS CONCLUDED THE THE KNOWN FLAW IN THE HEADLAMP ACTUALLY SHORTED OUT MY BULD. NOW I HAVE RECEIVED A QUOTE FOR OVER $1000++ TO REPLACE A FLAW IN THEIR DESIGN. HOW IS THIS GOOD BUSINESS? IF IT IS A KNOWN ISSUE TAKE CARE OF IT RIGHT? THIS IS A DESIGN FLAW, BASED ON NUMEROUS CADILLAC COMPLAINTS AS WELL AS NOTES FOUND ON THIS VERY NHTSA WEBSITE. IN IT'S CURRENT STATE, THE VEHICLE IS NOT DRIVABLE IN LOW VISIBILITY CONDITIONS OR AT NIGHT BECAUSE THE HEADLIGHTS HAVE FAILED DUE TO A DESIGN FLAW. DEALER WILL NOT REPAIR UNDER EXTENDED WARRANTY, AND WITHOUT REPAIR THE VEHICLE WILL NOT EVEN PASS A STATE SAFETY INSPECTION. THIS IS A RECALL WORTHY FAULT WHICH COULD LEAD TO LOSS OF LIFE IF FAULT OCCURS IN LOW VISIBILITY OR NIGHT DRIVING, AND RENDERS THE VEHICLE UNSAFE AS IT WILL NOT PASS STATE SAFETY INSPECTION. PLEASE FORCE GM TO ISSUE RECALL ON THIS ISSUE. *JS

g.  December 1, 2014 THE RIGHT EXTERIOR LOW BEAM LIGHT WAS OUT AND THE HOUSING UNIT WAS FULL OF EXCESSIVE MOISTURE. ON SEPTEMBER 2, 2014; BULB REPLACED; LIGHT OUT AGAIN BY THE END OF THE MONTH FOR A WEEK THEN ALL OF A SUDDEN BACK ON AGAIN; THEN OUT AGAIN AND ON AGAIN; ESTIMATED COST OF PARTS WERE $1,459 PLUS TAX AND S.S. NOW ONLY THE RUNNING LIGHTS ON THE LEFT AND RIGHT SIDE ARE WORKING. NOW TRY 1,459 PLUS TAX AND S.S.. TIMES 2. THIS IS A DESIGN FLAW. WHY SO MUCH MOISTURE AN ELECTRICAL LIGHTENING UNIT? THE LEFT SIDE DOES NOT HAVE A LOT OF MOISTURE AND THE LIGHT IS NO LONGER WORKING. NOTHING MORE UPSETTING THAN BEING AWAY FROM HOME, ITS DARK AND YOUR VEHICLE HEADLIGHTS WILL NOT COME ON. *JS

h.  December 10, 2014 LEFT LOW BEAM LIGHT WARNING CAME ON, TOOK IT TO SHOP TO CHANGE BULB, MECHANIC HAS CHANGED THE BULB, CHANGED THE BALLAST AND IT STILL DOESNT WORK, WHATS THE PROBLEM WITH THE

LEFT LIGHT NOT WORKING? *TR

i. December 30, 2014 THERE WAS AN ERROR MESSAGE IN MY DISPLAY TO CHECK PASSENGER LOW BEAM. I HAD THE PASSENGER HEADLAMP REPLACED AT A CADILLAC DEALERSHIP AT A COST OF $369.00. I LEFT THE DEALERSHIP AND DROVE TO MY DESTINATION DURING THE DAYLIGHT HOURS. WHEN I LEFT MY DESTINATION IT HAD GOTTEN DARK AND WHILE DRIVING THE HEADLAMP STOPPED WORKING. I HAVE SINCE FOUND OUT THAT THE SEAL ON THE HEADLAMP IS NO GOOD THEREFORE ALLOWING MOISTURE TO DEVELOP INSIDE THE HEADLAMP WHICH CAUSES THE PROBLEM. I HAVE FOUND THROUGH RESEARCH THAT THIS APPEARS TO BE A DESIGN FLAW WITH THIS MODEL AND MANY PEOPLE HAVE HAD LOSS OF HEADLIGHTS AT TIMES WHEN IT WOULD POSE A SAFETY ISSUE. THE REPAIR IS VERY COSTLY (APPROXIMATELY $1400 PER HEADLAMP). THERE IS MOISTURE IN THE DRIVERS SIDE HEADLAMP AS WELL SO IT STANDS TO REASON THAT IT IS JUST A MATTER OF TIME BEFORE THAT LAMP STOPS WORKING. I ONLY HAVE 73,000 MILES ON THE CAR AND WITHOUT SPENDING $3000 TO RECTIFY THE PROBLEM, I COULD FIND MYSELF WITH NO LIGHTS WHILE DRIVING AT NIGHT. THIS IS IN MY OPINION MOST DEFINITELY A POTENTIAL SAFETY ISSUE! *JS

j. January 21, 2015 THE HEAD LIGHT LENS LEAK AT THE SEAM. BOTH HEAD LIGHTS ARE EFFECTED. MOISTURE ACCUMULATES INSIDE THE LENS AND DISTORTS THE HEAD LIGHT BEAM. THIS REDUCES THE CLARITY AND EFFECTIVENESS OF THE HEAD LIGHTS. I HAVE REPLACED ONE HEADLIGHT AT 45,000 MILES. THE HEAD LIGHT SEAL LEAKS WATER. POOR MANUFACTURING AND A SAFETY CONCERN. THERE SHOULD BE A RECALL. *TR

## 2011 Cadillac SRX

k. February 15, 2012 TL* THE CONTACT OWNS A 2011 CADILLAC SRX. WHILE DRIVING APPROXIMATELY 45 MPH WITH THE HEADLIGHTS ACTIVATED, THE AMBER ILLUMINATION BECAME EXTREMELY DIM WHICH OBSTRUCTED THE VISIBILITY OF THE CONTACT. THE FAILURE RECURRED WHENEVER THE CONTACT WOULD DRIVE WITH HEADLIGHTS ACTIVATED. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER WHO WAS UNABLE TO PROVIDE ASSISTANCE. THE MANUFACTURER WAS NOTIFIED OF THE PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 10,000. UPDATED 07/05/12*LJ HE CONSUMER STATED THE HEADLIGHTS LIGHTS WERE AMBER IN COLOR AND DIDN'T ILLUMINATE PROPERLY WHILE DRIVING AT NIGHT. UPDATED 07/10/12.

l. January 5, 2013 THE HEADLIGHTS - LOW BEAM - ARE THE WORST. I'VE BEEN DRIVING FOR OVER 40 YEARS. WHEN I COMPLAINED TO THE DEALERSHIP (CRESTVIEW CADILLAC -

WEST COVINA, CA) THAT THEY WERE SO BAD I BELIEVED IT IS DANGEROUS TO DRIVE AT NIGHT, THEY SAID THEY DIDN'T GET ANY COMPLAINTS FROM OTHER DRIVERS! I HAVE TO USE MY HIGH BEAMS ALL THE TIME TO BE SAFE. I HAVE HAD PASSENGERS TELL ME I DON'T HAVE MY HEADLAMPS ON!! IT'S A VERY REAL PROBLEM. I HAVE FOUND SEVERAL COMPLAINT PAGES ON LINE. I BELIEVE THEY SHOULD DO A RECALL ON THESE CARS AND FIX THE PROBLEM. IF I GO TO AFTER MARKET, I'M AFRAID ILL NULLIFY MY WARRANTY. PLEASE HELP! *TR

m.    October 23, 2013 THE LOW BEAM HEADLIGHTS ARE VERY DIM. THEY DO NOT REACH OUT LIKE THEY SHOULD. DEALER TELLS ME THAT'S THE WAY THEY ARE, I DO NOT FEEL THEY ARE SAFE!!! *TR

n.    November 7, 2014 TL* THE CONTACT OWNS A 2011 CADILLAC SRX. THE CONTACT STATED THAT MOISTURE WAS ACCUMULATING IN THE FRONT PASSENGER'S SIDE HEADLIGHT LENS. AS A RESULT, THE LIGHT BECAME SO DIM THAT IT LOOKED AS IF ONLY ONE HEADLIGHT WAS ACTIVATED. THE VEHICLE WAS TAKEN TO THE DEALER. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE ON THE VEHICLE WAS 67,511.

o.    February 2, 2017 I'VE HAD MY CAR FOR A LITTLE OVER A MONTH AND HONESTLY CANNOT SEE ANYTHING WITH THE HEADLIGHTS. WHEN I FLIP THEM OVER TO BRIGHTS, THEY ILLUMINATE THE ROADWAY PERFECTLY. ONCE I GO BACK TO NORMAL LIGHTING, NOTHING IS LIT. I'VE PULLED OVER A COUPLE OF TIMES TO MAKE SURE THE LIGHTS WERE ACTUALLY ON AND NOTHING WAS COVERING THE HEADLIGHTS. I AM VERY AFRAID THAT AN ACCIDENT WILL OCCUR BECAUSE I CAN'T SEE THE ROADWAY IN FRONT OF ME. PLEASE ADVISE IF THIS IS BEING LOOKED INTO. *TR

p.    January 22, 2016 FRONT HEADLIGHT ASSEMBLIES ARE DEFECTIVE AND ALLOW CONDENSATION TO BUILD UP BEHIND LENS CAUSING HEADLIGHTS TO BE LESS EFFECTIVE AND EVENTUALLY SHORT OUT ELECTRICAL SYSTEM. THIS CONDITION HAS OCCURRED TWICE (ON BOTH FRONT PASSENGER AND DRIVERS SIDE) SINCE I PURCHASED THIS VEHICLE IN 2014, MOST RECENTLY WHILE DRIVING HOME ON THE HIGHWAY AT NIGHT NEARLY CAUSING AN ACCIDENT. THESE DEFECTIVE HEADLIGHT ASSEMBLIES ARE VERY DANGEROUS AND SHOULD BE ADDRESSED, VIA A RECALL, BY CADILLAC ASAP. AN INTERNET SEARCH ON THIS ISSUE REVEALED HUNDRED OF SIMILAR COMPLAINTS AND I SUSPECT CADILLAC IS WELL AWARE OF THIS DEFECTIVE PART.

**2012 Cadillac SRX**

q.    December 22, 2014 TL* THE CONTACT OWNS A 2012

CADILLAC SRX. THE CONTACT STATED THAT WHILE DRIVING AT 35 MPH, THE LOW BEAM HEADLIGHTS FAILED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN. UPDATED 2/9/15*CN

r.      February 13, 2015 TL* THE CONTACT OWNS A 2012 CADILLAC SRX. THE CONTACT STATED THAT THE PASSENGER SIDE HEADLIGHT RECEIVED EXCESSIVE AMOUNTS OF MOISTURE, CAUSING THEM TO SHORT CIRCUIT. THE DEALER STATED THAT THE ENTIRE LIGHTING ASSEMBLY AND SEALS NEEDED TO BE REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 52,485.

s.      February 8, 2016 HEADLIGHTS HAVE WATER IN THEM CAUSING LOSS OF DRIVING VISABILITY AT NIGHT. DEALER REFUSES TO REPLACE THEM UNDER BUMPER TO BUMPER WARRANTY.

t.      April 8, 2016 LOW BEAM HEADLIGHT IS VERY POOR. VERY DIFFICULT TO SEE AND IS VERY DANGEROUS.

u.      December 26, 2016 LOW BEAM HEADLAMPS ARE DISFUNCTIONAL. THEY ARE SO DIM, YOU CANNOT DRIVE THE VEHICLE AT NIGHT WITHOUT THE AIDE OF THE HIGH BEAM HEADLAMPS.

v.      January 7, 2017 VEHICLE LOW BEAM/DAYTIME RUNNING LIGHTS ILLUMINATION DOES NOT ALLOW YOU TO SEE THE ROAD AT NIGHT MAKING IT A SEVERE SAFETY HAZARD.

**2013 Cadillac SRX**

w.      April 13, 2016 TL* THE CONTACT OWNS A 2013 CADDILIAC SRX. THE CONTACT STATED THAT THE EXTERIOR HEADLAMPS HAD NOT EMITTED ENOUGH LIGHT WHILE DRIVING. THE CONTACT STATED THAT IT WAS DIFFICULT TO VIEW THE ROADS DURING NIGHT TIME DUE TO THE FAILURE. THE VEHICLE WAS TAKEN TO THE DEALER WHERE THE HEADLIGHTS WERE REPLACED HOWEVER, THE FAILURE RECURRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 40,000. THE VIN WAS NOT PROVIDED.

**2014 Cadillac SRX**

x.      June 2, 2014 TL* THE CONTACT OWNS A 2014 CADILLAC SRX. THE CONTACT STATED THAT WHILE DRIVING AT NIGHT WITH THE LOW BEAM HEADLIGHTS ACTIVATED, THE LIGHTS WERE VERY DIM MAKING AND CAUSING THE CONTACT DIFFICULTY IN SEEING PAST 50 FEET IN FRONT OF THE VEHICLE. THE VEHICLE WAS TAKEN TO THE DEALER HOWEVER, THE FAILURE COULD NOT BE DIAGNOSED. THE

MANUFACTURER WAS NOT NOTIFIED OF THE ISSUE. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 200.

y.    November 27, 2016 EXTREMELY DIM LOW BEAM HEADLIGHTS. TOOK VEHICLE TO DEALER, THEY CONSULTED WITH GM. GM REPORTED THEY RECOMMENDED CHANGING THE LOW BEAMS, BUT IT MIGHT NOT CORRECT THE PROGRAM. HEADLIGHTS WERE REPLACE, DID NOT IMPROVE SITUATION. ATTEMPTED REPAIR AMOUNTED TO $255.00

z.    February 7, 2017 THE LOW BEAMS ON OUR SRX ARE UNSAFE. WENT TO OUR DEALER AND WAS ADVISED THERE IS NO GM FIX AVAILABLE TO OUR CAR EXCEPT TO BUY BULBS FROM AFTER MARKET SOURCE AND THEY DID NOT RECOMMEND THAT SOLUTION. THE HEAD LIGHTS ON OUR CAR ARE UNSAFE. NOT ENOUGH LIGHT ON ROAD TO DRIVE SAFELY. THIS IS PARTICULARLY TRUE FOR US OLDER DRIVERS. SEEMS GM WOULD PUT GOOD HEADLIGHTS HIGH ON THEIR ENGINEERING REQUIREMENT LIST. THEY DID NOT DO SO WITH THE SRX. THIS MUST BE CORRECTED BEFORE SOMEONE IS HURTS OR KILLED.

aa.    February 22, 2017 LOW BEAM HEADLIGHTS ARE SO DIM THAT THEY ARE AN ACCIDENT IN WAITING. THEY DO NOT PROJECT FAR ENOUGH TO AVOID "OVER DRIVING" THEM. DEALER SAYS THEY ARE ADJUSTED TO SPEC. PEDESTRIANS ARE AT RISK AS IS THE RISK OF HITTING WILDLIFE. IN AMBIENT LIGHT, CANNOT TELL THE LIGHTS ARE EVEN ON! HAVE INSTALLED BRIGHTER BULBS TO NO AVAIL. THIS PROBLEM IS INHERENT IN THE CADILLAC AND NEEDS TO BE ADDRESSED AT THE NHTSA. PROBLEM NOTED ALL OVER THE WEB.

55.    Complaints posted by consumers in other public internet forums similarly demonstrate that the defect is widespread. The complaints also indicate Defendants' awareness of the problems with the headlights and how potentially dangerous the defective condition is for consumers. The following are examples of complaints relating to the prevalence of the Headlight Defect (spelling and grammar mistakes remain as found in the original):

**CadillacForums.com: from Thread entitled "Head lamp condensation and water penetration"[5]**

---

[5] CadillacForums.com, *available at* http://www.cadillacforums.com/forums/cadillac-srx-second-generation-forum-2010/637417-fix-leaking-headlights-water-condensation-moisture-2.html (last visited Sep. 15, 2017).

a.  (posted 12-31-13 at 11:01pm by Andy_TN): Ok folks. Here's a new one....My wife takes the SRX in today for the final warranty repair list - headlight condensation being one of the items. The service advisor admits that there is a big problem and GM has been replacing a LOT of SRX headlights. It's so prevalent that now, supposedly, the service advisors are supposed to convince the customer that the condensation is not unusual and that GM will NOT replace these anymore under warranty....unless it's really bad and you've got a foot of water in the headlight assembly. As my wife is explaining this to me, she and I both a bit shocked that the advisor would openly admit the problem exists AND 'sell out' GM by indicating their position on the issue. I guess he's trying to earn points by being honest! Anyways, the dealer was so busy that we weren't even able to leave the car today so an appointment was made for next week. And while he admitted that he hadn't yet seen how extensive the water is in our headlight, the feeling she got was that they really are going to resist. Obviously, that's not going to be acceptable. I'll be sure and update....

b.  (posted on 10-22-13 at 12:52pm by stevec5375): I heard back from my dealership on my right front headlight. They have had my SRX since Saturday morning and are still waiting on the headlight to come in. According to my service adviser, there are a lot of 2010 models with this problem and headlights for that MY are getting in short supply. So if you have the 2010 model you better hope yours fails before the warranty runs out. These puppies are expensive if paying out of pocket.

**GM Had Exclusive Knowledge of the Headlight Defect**

56.   GM had superior and exclusive knowledge of the Headlight Defect

and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased their Class Vehicles.

57.    Plaintiffs are informed and believe and based thereon allege that before Plaintiffs purchased their Class Vehicles, and since at least 2010, GM knew about the Headlight Defect through sources in its exclusive custody and control and thus not available to consumers, including pre-production design failure mode and analysis data, production design failure mode and analysis data, pre-release testing data, early consumer complaints about the Headlight Defect to GM and its agents, testing conducted in response to those complaints, high failure rates and replacement part sales data, and other aggregate data from Cadillac dealers.

58.    In fact, in December of 2011, Defendant issued a Customer Satisfaction Campaign ("CSC") that identified a condition caused by the loss of electrical contact between the halogen headlamp connectors and low beam headlamp bulbs that "could cause the headlamp and/or daytime running lamp to work intermittently."  CSC No. 10043330-5822 offered to replace the headlamp connectors and low beam bulbs free of charge or to reimburse customers who previously had paid for this repair but did not identify the root cause of the malfunction or exclude the accumulation of moisture and/or condensation in the housing.

59.    In addition, several iterations of a TSB regarding an inoperative low beam headlamp have been released since May 2010 to address the same issue. In May 2010, Defendant issued the initial TSB, Bulletin No. 10-08-42-001,  that applied to various vehicles, including the 2010 Cadillac SRX, and excluded vehicles equipped with High Intensity Discharge lamps. The bulletin alerted service technicians that "[s]ome customers may comment that the low beam headlamp is inoperative." The recommended procedure included replacing the

bulb and verifying any discoloration or damage to the connector that would require the replacement of that part too. The TSB was re-issued on or around January 24, 2011, as Bulletin No. 10-08-42-001A to add vehicles, including the SRX model year 2011, and update the relevant part number.  Defendant subsequently updated the bulletin at regular intervals, releasing Bulletin No. 10-08-42-001C in February 2012, Bulletin No. 10-08-42-001D in November 2014, and Bulletin No. 10-08-42-001E in May 2015, which bulletin included the SRX model years 2010-2013. The repair procedure was also explained in far greater detail and included replacing the wiring harness and inspecting the connector for discoloration at the bulb interface. Like the CSC, they do not identify the root cause of the malfunction or exclude the accumulation of moisture and/or condensation in the housing.

60.    The existence of the Headlight Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a vehicle, and only the CSC would have been disseminated to consumers, leaving them to discovery the problems identified in the TSBs on their own. Had Plaintiffs and other Class Members known that the Class Vehicles were equipped with defective headlights, they would not have purchased or leased the Class Vehicles or would have paid less for them.

61.    Reasonable consumers, like Plaintiffs, reasonably expect that a vehicle's headlights are safe, will function in a manner that will not pose a safety hazard, and a free from defects.  Plaintiffs and Class Members further reasonably expect that GM will not sell or lease vehicles with known safety defects, such as the Headlight Defect, and will disclose any such defects to consumers when it learns of them.  Plaintiffs and Class Members did not expect GM to fail to disclose the Headlight Defect to them and to continually deny the defect.

**GM Has Actively Concealed the Headlight Defect**

62.    While it has been fully aware of the Headlight Defect in the Class

Vehicles, GM actively concealed the existence and nature of the defect from Plaintiffs and Class Members at the time of purchase, lease or repair and thereafter.  Specifically, GM failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a)     any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the headlights;

(b)     that the Class Vehicles, including their headlights, were not in good in working order, were defective, and were not fit for their intended purposes; and

(c)     that the Class Vehicles and their headlights were defective, despite the fact that GM learned of such defects through failure rates, customer complaints, as well as through other internal sources, as early as 2010.

63.     In fact, GM has always emphasized the quality and reliability of the Class Vehicles and knows that consumers, including Plaintiffs and putative Class Members, rely upon such factors when purchasing or leasing Class Vehicles. For example, the Cadillac brochure "Introducing the All-New 2010 SRX Crossover," assures consumers that "[e]very detail of the SRX Crossover has been carefully considered."[6]  The brochure for the 2011 SRX extols its virtues and assures consumers specifically that "passenger safety is a primary consideration throughout the engineering process…[and] the SRX was designed to help avoid collisions."[7] The 2012 SRX brochure states categorically that the vehicles'

---

[6] Cadillac, "The All-New 2010 SRX Crossover," *available at* http://www.motorologist.com/wp-content/uploads/2010-Cadillac-SRX-brochure.pdf (last visited Sep. 15, 2017).

[7] Cadillac, "The 2011 SRX Crossover" *available at* http://www.cadillac.com/content/dam/Cadillac/Global/master/nscwebsite/en/home/Help_Center/Download_Brochure/01_images/Cadillac_2011_SRX.pdf (last visited Sep. 15, 2017).

"Adaptive Forward Lighting…provide[s] optimal illumination closer or farther down the road."[8] And the "2015 SRX" brochure asserts that the "available HD headlamps with Adaptive Forward Lighting help guide you around curves and corners at night."[9]

64.     Rather than repairing or replacing the defective headlights, GM issued a series of service bulletins advising its technicians to make repairs with the same defective parts. Furthermore, when consumers present the Class Vehicles to an authorized GM dealer for repair of the headlights, rather than repair the problem under warranty, GM dealers either inform consumers that their vehicle headlights are functioning properly, conduct repairs that merely mask the defect, or charge the customer for repairs.

65.     Because the TSBs issued by GM since 2010 were not directly communicated to consumers, GM failed to disclose the defect to owners and lessors of the Class Vehicles, including Plaintiffs and members of the Classes, despite the fact that GM knew or should have known of the defect and its associated safety hazards,

66.     To date, GM has still not modified or redesigned the components at issue, and the Headlight Defect remains unresolved.

67.     On information and belief, GM has caused Plaintiffs and Class Members to expend money at its dealerships to diagnose, repair, or replace the Class Vehicles' headlights and their component parts, despite GM's knowledge of the Headlight Defect.

**TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL**

68.     Any applicable statute of limitations has been tolled by Defendant's

---

[8] Cadillac, "The 2012 Cadillac SRX," *available at* http://www.motorologist.com/wp-content/uploads/2012-cadillac_srx_brochure.pdf (last visited Sep. 15, 2017).

[9] Cadillac, "2015 SRX," available at http://www.motorologist.com/wp-content/uploads/2015_Cadillac-SRX-brochure.pdf (last visited Sep. 15, 2017).

1  knowing and active concealment of the Headlight Defect and the omissions
2  alleged herein. Through no fault or lack of diligence, Plaintiffs and Class
3  Members were deceived regarding the defective headlights and could not
4  reasonably discover the defect or Defendant's deception with respect to it.

5      69.     Plaintiffs and Class Members did not discover and did not know of
6  any facts that would have caused a reasonable person to suspect that Defendant
7  was concealing a defect and/or that the Class Vehicles were equipped with
8  defective headlights or any corresponding safety hazard. As alleged herein, the
9  existence of the Headlight Defect and the safety hazards it creates were material
10 to Plaintiffs and the Class at all relevant times. Furthermore, Plaintiffs and Class
11 Members could not have discovered through the exercise of reasonable diligence
12 that Defendant was concealing the Headlight Defect during any applicable
13 statutes of limitations.

14     70.     At all times, Defendant is and was under a continuous duty to
15 disclose to Plaintiffs and the Class the true standard, quality, and grade of the
16 Class Vehicles and to disclose the Headlight Defect and associated safety
17 hazards.

18     71.     Defendant knowingly, actively, and affirmatively concealed the
19 facts alleged herein, including the unreasonable safety hazards resulting from the
20 alleged defects. Plaintiffs and Class Members reasonably relied on Defendant's
21 knowing, active, and affirmative concealment.

22     72.     For these reasons, all applicable statutes of limitation have been
23 tolled based on the discovery rule and Defendant's fraudulent concealment, and
24 Defendant is estopped from relying on any statutes of limitations in defense of
25 this action.

26                    **CLASS ACTION ALLEGATIONS**

27     73.     Plaintiffs bring this lawsuit as a class action on behalf of themselves
28 and all others similarly situated as members of the proposed Class pursuant to

Federal Rules of Civil Procedure 23(a) and 23(b)(3).  This action satisfies the

numerosity, commonality, typicality, adequacy, predominance, and superiority

requirements of those provisions.

74. The Class and Sub-Class are defined as:

> **Nationwide Class**:  All individuals in the United States
> who purchased or leased any 2010-2015 Cadillac SRX
> vehicle (the "Nationwide Class" or "Class").

> **California Sub-Class**:  All members of the Nationwide
> Class who reside in the State of California.

> **CLRA Sub-Class**:  All members of the California Sub-
> Class who are "consumers" within the meaning of
> California Civil Code § 1761(d).

> **Implied Warranty Sub-Class**:   All members of the
> Nationwide Class who purchased or leased their vehicles
> in the State of California.

75.   Excluded from the Class and Sub-Classes are:  (1) Defendant, any

entity or division in which Defendant has a controlling interest, and their legal

representatives, officers, directors, assigns, and successors; (2) the Judge to

whom this case is assigned and the Judge's staff; (3) any Judge sitting in the

presiding state and/or federal court system who may hear an appeal of any

judgment entered; and (4) those persons who have suffered personal injuries as a

result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class

and Sub-Class definitions if discovery and further investigation reveal that the

Class and Sub-Classes should be expanded or otherwise modified.

76.   Numerosity:  Although the exact number of Class Members is

uncertain and can only be ascertained through appropriate discovery, the number

is great enough such that joinder is impracticable.  The disposition of the claims

of these Class Members in a single action will provide substantial benefits to all

parties and to the Court.  The Class Members are readily identifiable from

information and records in Defendant's possession, custody, or control, as well

as from records kept by the Department of Motor Vehicles.

77.   <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by GM and equipped with the defective headlights.  The representative Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that they have incurred or will incur the cost of repairing or replacing the defective headlight assemblies and/or their individual components.  Furthermore, the factual bases of GM's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class as a whole.

78.   <u>Commonality</u>:  There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting only individual Class Members.  These common legal and factual issues include the following:

     (a)   Whether Class Vehicles suffer from defects relating to the headlights;

     (b)   Whether the defects relating to the headlights constitute an unreasonable safety risk;

     (c)   Whether Defendant knows about the defects relating to the headlights and, if so, how long Defendant has known of the defect;

     (d)   Whether the defective nature of the headlights constitutes a material fact;

     (e)   Whether Defendant has a duty to disclose the defective nature of the headlights to Plaintiffs and Class Members;

     (f)   Whether Plaintiffs and Class Members are entitled to equitable relief, including a preliminary and/or permanent injunction;

     (g)   Whether Defendant knew or reasonably should have known of

the defects relating to the headlights before it sold and leased

Class Vehicles to Class Members;

    (h)    Whether Defendant should be declared financially responsible

for notifying all Class Members of the problems with the

Class Vehicles and for the costs and expenses of repairing and

replacing the defective headlight assemblies and/or their

components;

    (i)    Whether Defendant is obligated to inform Class Members of

their right to seek reimbursement for having paid to diagnose,

repair, or replace their defective headlight assemblies and/or

components;

    (j)    Whether Defendant breached the implied warranty of

merchantability pursuant to the Magnuson-Moss Act; and

    (k)    Whether Defendant breached the implied warranty of

merchantability pursuant to the Song-Beverly Act.

79.    <u>Adequate Representation</u>:  Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

80.    <u>Predominance and Superiority</u>:  Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members

1  will continue to incur damages, and Defendant's misconduct will continue

2  without remedy.  Class treatment of common questions of law and fact would

3  also be a superior method to multiple individual actions or piecemeal litigation in

4  that class treatment will conserve the resources of the courts and the litigants,

5  and will promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**

**(Violation of California's Consumers Legal Remedies Act,**

**California Civil Code § 1750, *et seq*.)**

9      81.    Plaintiffs incorporate by reference the allegations contained in the

10  preceding paragraphs of this Complaint.

11     82.    Plaintiffs bring this cause of action on behalf of themselves and the

12  CLRA Sub-Class.

13     83.    Defendant is a "person" as defined by California Civil Code

14  § 1761(c).

15     84.    Plaintiffs and CLRA Sub-class Members are "consumers" within the

16  meaning of California Civil Code § 1761(d) because they purchased their Class

17  Vehicles primarily for personal, family, or household use.

18     85.    By failing to disclose and actively concealing the defective nature of

19  the headlights from Plaintiffs and prospective Class Members, Defendant

20  violated California Civil Code § 1770(a), as it represented that the Class

21  Vehicles and their headlights had characteristics and benefits that they do not

22  have, and represented that the Class Vehicles and their headlights were of a

23  particular standard, quality, or grade when they were of another.  *See* Cal. Civ.

24  Code §§ 1770(a)(5) & (7).

25     86.    Defendant's unfair and deceptive acts or practices occurred

26  repeatedly in Defendant's trade or business, were capable of deceiving a

27  substantial portion of the purchasing public, and imposed a serious safety risk on

28  the public.

87.     Defendant knew that the Class Vehicles and their headlights suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

88.     As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Additionally, as a result of the Headlight Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' headlight assemblies and their components are substantially certain to fail before their expected useful life has run.

89.     Defendant was under a duty to Plaintiffs and Class Members to disclose the defective nature of the headlights and/or the associated repair costs because:

(a)     Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' headlights;

(b)     Plaintiffs and Class Members could not reasonably have been expected to learn or discover that their headlights had a dangerous safety defect until it manifested; and

(c)     Defendant knew that Plaintiffs and Class Members could not reasonably have been expected to learn of or discover the safety defect.

90.     In failing to disclose the defective nature of the headlights, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

91.     The facts Defendant concealed from or failed to disclose to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less.  Had they known that the Class Vehicles' headlights were defective, Plaintiffs would not have purchased or leased the Class Vehicles or would have paid less for them.

FIRST AMENDED CLASS ACTION COMPLAINT

92.     Plaintiffs and Class Members are reasonable consumers who do not expect the headlights installed in their vehicles to exhibit problems such as extremely premature wear and frequent replacement or repair.

93.     This is the reasonable and objective consumer expectation relating to vehicle headlights.

94.     As a result of Defendant's conduct, Plaintiffs and Class Members were harmed and suffered actual damages in that, on information and belief, the Class Vehicles experienced and will continue to experience problems such as the unexpected and premature wear and frequent replacement or repair of the vehicle's headlights.

95.     As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs and Class Members suffered and will continue to suffer actual damages.

96. Plaintiffs and the Class are entitled to equitable relief.

97.     Plaintiff Steele provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a).  Defendant failed to provide appropriate relief for their violations of the CLRA within 30 days. Therefore, Plaintiffs seek monetary, compensatory, and punitive damages, in addition to injunctive and equitable relief.

## SECOND CAUSE OF ACTION

**(Violation of California Business & Professions Code § 17200, *et seq.*)**

98.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

99.     Plaintiffs bring this cause of action on behalf of themselves and the California Sub-Class.

100.   As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Additionally, as a result of the

Headlight Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' headlight assemblies and their components are substantially certain to fail before their expected useful life has run.

101.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

102.   Plaintiffs and Class Members are reasonable consumers who do not expect their headlights to exhibit problems such as unexpected and premature wear leading to catastrophic failure and frequent replacement or repair.

103.   Defendant knew the Class Vehicles and their headlights suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

104.   In failing to disclose the defects with the headlights, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

105.   Defendant was under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles and their headlights because:

>         (a)   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' headlights;
>
>         (b)   Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their headlights; and
>
>         (c)   Defendant actively concealed the defective nature of the Class Vehicles and their headlights from Plaintiffs and the Class.

106.   The facts Defendant concealed from or did not disclose to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles.  Had they known that the Class Vehicles' headlights were defective

and posed a safety hazard, then Plaintiffs and the other Class Members would not have purchased or leased Class Vehicles equipped with the headlights or would have paid less for them.

107.   Defendant continued to conceal the defective nature of the Class Vehicles and their headlights even after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature of the problem.

108.   Defendant's conduct was and is likely to deceive consumers.

109.   Defendant's acts, conduct and practices were unlawful, in that they constituted:

(a)   Violations of California's Consumers Legal Remedies Act;

(b)   Violations of the Song-Beverly Consumer Warranty Act;

(c)   Violations of the Magnuson-Moss Warranty Act.

110.   By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

111.   Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

112.   As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

113.   Defendant has been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

## THIRD CAUSE OF ACTION

**(Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)**

114.   Plaintiffs incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint.

115.   Plaintiffs bring this cause of action against Defendant on behalf of themselves and the Implied Warranty Sub-Class.

116.   Plaintiffs' vehicles are "consumer goods" within the meaning of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code 1795.5, and Plaintiff Steele was given an express warranty by GM.

117.   Defendant was at all relevant times the Distributor of the Class Vehicles. Further, Defendant administered, supervised, and approved the certification of "certified pre-owned" vehicles sold at its authorized dealerships. Defendant also knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

118.   Defendant is a "distributor" within the meaning of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791(e), and stands between the manufacturer and the retail seller in purchases, consignments, or contracts for sale of consumer goods as the entity responsible for certification of pre-owned vehicles.

119.   Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

120.   Defendant provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their headlights suffered from an inherent defect at the time of sale and thereafter are not fit for their particular purpose of providing safe and reliable transportation.

121.   Defendant impliedly warranted that the Class Vehicles were of

merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their headlights, manufactured, supplied, distributed, and/or sold by GM, were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their headlights would be fit for their intended use while the Class Vehicles were being operated.

122.   Contrary to the applicable implied warranties, the Class Vehicles and their headlights, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation, including at night and in inclement weather.  Instead, the Class Vehicles are defective, including  the defective design of their headlights.

123.   The Headlight Defect is inherent and was present in each Class Vehicle at the time of sale.

124.   As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Headlight Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' headlight assemblies and their components are substantially certain to fail before their expected useful life has run.

125.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## FOURTH CAUSE OF ACTION

### (Breach of Implied Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.*)

126.   Plaintiffs incorporate by reference the allegations contained in the

preceding paragraphs of this Complaint.

127.   Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class, or, in the alternative,  the California Sub-Class, against Defendant.

128.   The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

129.   Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

130.   Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

131.   GM impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their headlights, manufactured, supplied, distributed, and/or sold by GM, were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their headlights would be fit for their intended use while the Class Vehicles were being operated.

132.   Contrary to the applicable implied warranties, the Class Vehicles and their headlights, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including the defective design of their headlights.

133.   Defendant's breach of implied warranties has deprived Plaintiffs and Class Members of the benefit of their bargain.

134.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25,000.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

FIRST AMENDED CLASS ACTION COMPLAINT

135. Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and repair of the headlights.

136. As a direct and proximate cause of Defendant's breach of implied warranties, Plaintiffs and Class Members sustained damages and other losses in an amount to be determined at trial. Defendant's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

137. As a result of Defendant's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs and Class Members have incurred damages.

## RELIEF REQUESTED

138. Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendant, as follows:

(a) An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as named representative of the Class, and designating the undersigned as Class Counsel;

(a) A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the headlights, including the need for periodic maintenance;

(b) An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendant to issue a voluntary recall for the Class Vehicles pursuant to. 49 U.S.C. § 30118(a); compelling Defendant to remove, repair, and/or replace the Class Vehicles' defective headlight components with suitable alternative product(s) that do not contain the defects alleged

1          herein; enjoining Defendant from selling the Class Vehicles

2          with the misleading information; and/or compelling

3          Defendant to reform its warranty, in a manner deemed to be

4          appropriate by the Court, to cover the injury alleged and to

5          notify all Class Members that such warranty has been

6          reformed;

7   (c)   A declaration requiring Defendant to comply with the various

8          provisions of the Song-Beverly Act alleged herein and to

9          make all the required disclosures;

10  (d)   An award to Plaintiffs and the Class for compensatory,

11         exemplary, and statutory damages, including interest, in an

12         amount to be proven at trial;

13  (e)   Any and all remedies provided pursuant to the Song-Beverly

14         Act, including California Civil Code section 1794;

15  (f)   Any and all remedies provided pursuant to the Magnuson-

16         Moss Warranty Act;

17  (g)   A declaration that Defendant must disgorge, for the benefit of

18         the Class, all or part of the ill-gotten profits it received from

19         the sale or lease of its Class Vehicles or make full restitution

20         to Plaintiffs and Class Members;

21  (h)   An award of attorneys' fees and costs, as allowed by law;

22  (i)   An award of attorneys' fees and costs pursuant to California

23         Code of Civil Procedure § 1021.5;

24  (j)   An award of pre-judgment and post-judgment interest, as

25         provided by law;

26  (k)   Leave to amend the Complaint to conform to the evidence

27         produced at trial; and

28  //

FIRST AMENDED CLASS ACTION COMPLAINT

1          (l)     Such other relief as may be appropriate under the

2                  circumstances.

3                       **DEMAND FOR JURY TRIAL**

4      139.   Plaintiffs demand a trial by jury of any and all issues in this action

5  so triable.

6

7  Dated:  September 15, 2017              Respectfully submitted,

8                                         Capstone Law APC

9

10                                 By: /s/ Jordan L. Lurie

11                                     Jordan L. Lurie
                                       Tarek H. Zohdy
                                       Cody R. Padgett
12                                     Karen L. Wallace

13                                     Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

# EXHIBIT 1

Case 2:17-cv-04323-TJH-SK   Document 18   Filed 09/15/17   Page 39 of 40   Page ID #:125

DocuSign Envelope ID: 4D921370-B611-4591-86F3-D3445d62RB8d   Case 2:17-cv-04323   Document 1   Filed 06/09/17   Page 32 of 33   Page ID #:32

1   Jordan L. Lurie (SBN 130013)
    Jordan.Lurie@capstonelawyers.com
2   Tarek H. Zohdy (SBN 247775)
    Tarek.Zohdy@capstonelawyers.com
3   Cody R. Padgett (SBN 275553)
    Cody.Padgett@capstonelawyers.com
4   Karen L. Wallace (SBN 272309)
    Karen.Wallace@capstonelawyers.com
5   Capstone Law APC
    1875 Century Park East, Suite 1000
6   Los Angeles, California 90067
    Telephone:  (310) 556-4811
7   Facsimile:  (310) 943-0396

8   Attorneys for Plaintiff
    Chester Steele
9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13   CHESTER STEELE, individually,          Case No.:
     and on behalf of a class of similarly
14   situated individuals,
                                            **DECLARATION OF CHESTER**
15              Plaintiff,                   **STEELE IN SUPPORT OF VENUE**
                                            **FOR CLASS ACTION COMPLAINT**
16        v.                                **PURSUANT TO CIVIL CODE**
                                            **SECTION 1780(d)**
17   GENERAL MOTORS LLC, a
     Delaware Limited Liability Company
18
                Defendant.
19

20

21

22

23

24

25

26

27

28

DocuSign Envelope ID: 4D8213F0-B0FF-4591-88F3-D5445dd2A6B0

# DECLARATION OF CHESTER STEELE

I, CHESTER STEELE, declare under penalty of perjury as follows:

1.     I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information and belief, and as to those matters I believe them to be true.  I am over the age of eighteen, a citizen of the State of California, and a Plaintiff in this action.

2.     Pursuant to California Civil Code section 1780(d), this Declaration is submitted in support of Plaintiff's Selection of Venue for the Trial of Plaintiff's Cause of Action alleging violation of California's Consumers Legal Remedies Act.

3.     I purchased my 2010 Cadillac SRX, which is the subject of this action, from Jessup Auto Plaza Cathedral City, an authorized GM dealer in Riverside County, California.

4.     Therefore, this Court is a proper venue for the prosecution of my California's Consumers Legal Remedies Act cause of action because a substantial portion of the events giving rise to my claims occurred here.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.

Executed on June 6/8/2017 2017 in _____yreka_____, California.

DocuSigned by:

*Chester Steele*

0F5A04C2164845B

Chester Steele

Page 1

DECL. OF CHESTER STEELE IN SUPPORT OF PLAINTIFF'S SELECTION OF VENUE FOR TRIAL.